## CALL *v.* PALMER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF IOWA.

Argued November 18, 1885.—Decided December 14, 1885.

When an agent, who is authorized by his principal to lend money for lawful interest, exacts for his own benefit more than the lawful rate, without authority from or knowledge of his principal, the loan is not thereby rendered usurious.

Where the promissor in a usurious contract makes it the consideration of a new contract with a third person, not a party to the original contract, or to the usury paid or reserved upon it, and the new contract is not a contrivance to evade the statutes against usury, the latter is not illegal or usurious.

This was a suit in equity brought by Henry H. Palmer, the appellee, against Asa C. Call, the appellant, to foreclose a mortgage on the land of the latter given by him to secure his note for $11,000.

The record disclosed the following facts: Albert C. Burnham, residing in Illinois, was a partner in the firm of Burnham, Ormsby & Co., bankers, at Emmetsburg, Iowa. He had in his hands for investment $10,000 belonging to his relative, one Mrs. Davidson. Call applied in writing to Burnham, Ormsby & Co. for a loan of $10,000. Soon after the application was made Call met Burnham at Emmetsburg, Iowa, and they entered upon a treaty for the loan. Burnham thinking Call's proposition to be a favorable one, decided to accept it for Mrs. Davidson, and, after his return to Illinois, sent the money to Burnham, Ormsby & Co., at Emmetsburg, to be lent to Call on the terms proposed by him. Burnham, Ormsby & Co. took the note of Call dated in November, 1872, for $10,000, payable to A. C. Burnham, or order, on November 1, 1875, with ten per cent. interest, payable semi-annually, which Call secured by a mortgage on certain of his real estate in Iowa. Call received from Burnham, Ormsby & Co. $8000 for his note, they retaining $2000 as a compensation for their services in negotiating the loan. No part of this sum was paid to Mrs. Davidson—

she did not know that it had been deducted from the $10,000 lent by her to Call, and she never authorized Burnham or Burnham, Ormsby & Co. to lend her money at a greater rate of interest than ten per cent., or to retain any commission or bonus out of the sum lent. In short, she received no benefit from the usury and had no knowledge of it. A. C. Burnham held the note as the agent and trustee of Mrs. Davidson, but subject to her control. Afterwards the appellee, Palmer, who lived in New Jersey, bought of Burnham the $10,000 note of Call, with five coupon notes of $500 each, not then due, given by the latter for interest thereon. The notes were indorsed by Burnham to Palmer in September, 1873, and Palmer paid therefor in cash to Burnham for Mrs. Davidson the face of the principal note, $10,000, and the accrued interest. In this purchase Palmer acted for himself without the intervention of any agent whatever.

On November 13, 1875, the principal note being past due, Call, in order to raise money to pay it, applied in writing to Burnham, Ormsby & Co. to lend him $11,000 for five years. They, as agents of Palmer, agreed to loan Call the money. They took his note, dated November 1, 1875, for $11,000, payable to the order of Palmer, on November 1, 1880, with ten per cent. interest, payable semi-annually, secured by a mortgage executed by Call on his lands in Iowa.

The consideration for the note was as follows: Palmer delivered up to Call the $10,000 note, which he had purchased from Mrs. Davidson and released on the record the mortgage made to secure it, and he sent to Burnham, Ormsby & Co. $1000 in cash for Call. $500 of this $1000 was returned to Palmer through Burnham, Ormsby & Co., in payment of one of the coupon notes, for interest due on the Davidson note, and Call consented that Burnham, Ormsby & Co., who, through Ormsby, had procured for him the loan from Palmer, might retain the remaining $500 as a bonus for their services. Palmer had no notice or knowledge that Call had not received the full amount of the $10,000 for which he gave his note to Burnham for Mrs. Davidson until after the bringing of this suit, nor any notice or knowledge that the said $500 had been re-

tained by Burnham, Ormsby & Co. for their services in procuring the loan for $11,000, and did not in any manner authorize its retention by Burnham, Ormsby & Co.

Call set up the plea of usury to the suit brought by Palmer to foreclose his mortgage. The Circuit Court overruled the defence, and entered a decree against Call for the amount due on the note and for the foreclosure of the mortgage. The appeal of Call brings that decree under review.

*Mr. Whiting S. Clark* and *Mr. J. Harry Call* for appellant submitted on their brief.

*Mr. M. F. Morris* for appellee.

MR. JUSTICE WOODS delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The contention of Call is that the note given to Burnham for Mrs. Davidson was infected with usury in her hands and in the hands of Palmer, her indorsee, and that the note given by Call to Palmer was also usurious, by reason of the retention by Burnham, Ormsby & Co. of the $500 as a bonus for effecting the loan for Call.

The note which is the basis of this suit was made in Iowa, and the contract must be governed by the laws of Iowa. *De Wolf* v. *Johnson,* 10 Wheat. 367; *Scudder* v. *Union National Bank,* 91 U. S. 406.

The Code of Iowa of 1873, title 14, ch. 2, sec. 2077, provides: "The rate of interest shall be six cents on the hundred by the year on . . . money due or to become due when there is a contract to pay interest and no rate is stipulated. In all the cases above contemplated parties may agree in writing for payment of interest, not exceeding ten cents on the hundred by the year."

"SEC. 2079. No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum of value for the loan of money, or upon contract founded upon any bargain, sale, or loan of real or personal property, than is in this chapter prescribed.

" SEC. 2080. If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money or property, the same shall work a forfeiture of ten cents on the hundred by the year upon the amount of such contract to the school fund of the county in which the suit is brought, and the plaintiff shall have judgment for the principal sum, without either interest or costs. . . .

" SEC. 2081. Nothing in this chapter shall be so construed as to prevent the proper assignee in good faith and without notice of any usurious contract recovering against the usurer the full amount of the consideration paid by him for such contract less the amount of the principal money; but the same may be recovered of the usurer in the proper action before any court having competent jurisdiction."

We are of opinion that under these sections, as construed and administered by the Supreme Court of Iowa, the defence of usury was not maintained.

The $10,000 lent to Call by Burnham was the money of Mrs. Davidson, and the note taken therefor, though taken in the name of Burnham, was her note. Conceding that Burnham acted as her agent in making the loan, it does not follow that Mrs. Davidson is chargeable with making a usurious contract. It was said by this court in *Bank of the United States* v. *Waggener*, 14 Pet. 378, 399 : " That in construing the usury laws the uniform construction in England has been (and it is equally applicable here), that, to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest. . . . When the contract on its face is for illegal interest only, then it must be proved that there was some corrupt agreement or device or shift to cover usury, and that it was in the full contemplation of the parties. . . . There must be an intent to take illegal interest." To the same effect are the cases of *Lloyd* v. *Scott*, 4 Pet. 205 ; *Condit* v. *Baldwin*, 21 N. Y. 219 ; and *Jones* v. *Berryhill*, 25 Iowa, 289.

It is clear, therefore, that Mrs. Davidson cannot be charged with taking or reserving usurious interest, unless she was bound

by the acts of her agent, Burnham. But she was not so bound. It is settled that, when an agent who is authorized by his principal to lend money for lawful interest exacts for his own benefit more than the lawful rate, without authority or knowledge of his principal, the loan is not thereby rendered usurious. *Dagnall* v. *Wigley*, 11 East, 43; *Solarte* v. *Melville*, 7 B. & C. 430; *Barretto* v. *Snowden*, 5 Wend. 181; *Condit* v. *Baldwin*, 21 N. Y. 219; *Bell* v. *Day*, 32 N. Y. 165; *Conover* v. *Van Mater*, 18 N. J. Eq. (3 C. E. Green), 481, 486; *Rogers* v. *Buckingham*, 33 Conn. 81; *Gokey* v. *Knapp*, 44 Iowa, 32; *Wyllis* v. *Ault*, 46 Iowa, 46; *Brigham* v. *Myers*, 51 Iowa, 397.

In *Gokey* v. *Knapp*, *ubi supra*, the Supreme Court of Iowa said: "Although Danforth may have been the agent of Knapp for the purpose of loaning the money, and may have contracted for more than ten per cent. interest, yet the loan was not necessarily usurious. An authority to loan money at a legal rate of interest does not include, by implication, the authority to loan it at an illegal rate. An authority to violate the law will never be presumed. When Danforth exacted, in addition to the ten per cent. interest which was embraced in the note, something for the benefit of himself, he went outside the legitimate purposes of his agency, and as Knapp did not authorize it expressly or by implication, he should not be affected thereby."

So in *Brigham* v. *Myers*, 51 Iowa, 397, it was held to be "well settled that when an agent for loaning money takes a bonus or commission to himself beyond the legal rate of interest, without the knowledge, authority, or consent of his principal, it does not affect with usury the loan of the principal."

These decisions seem to be founded on plain principles of justice and right. For when two persons, the agent and the borrower, conspire together and for their own purposes violate the law, how can punishment for their acts be justly imposed on the innocent third party, the lender?

The fact on which stress is laid by counsel for defendant, that Burnham, in his treaty with Call, did not disclose his agency, but professed to be acting for himself, appears to be an immaterial circumstance. The misrepresentation of Burnham did not injuriously affect any right of Call, unless it can

be said that he was entitled to know who the real lender was, so as to place himself in a position to plead usury against her. It can hardly be contended that the penalties imposed for a violation of the usury laws are intended as a reward to the borrower.

According to the principles of jurisprudence as generally administered, and especially as applied by the Supreme Court of Iowa under the statute law of that State, if suit had been brought by Mrs. Davidson herself to enforce the payment of the note given by Call to Burnham for her, the defence of usury would have failed. It cannot, therefore, hold as against Palmer.

But the defence of usury set up in this suit must fail for another reason. For it is settled that, where the promissor in a usurious contract makes it the consideration of a new contract with a third person not a party to the original contract, or to the usury paid or reserved upon it, and the new contract is not a contrivance to evade the statutes against usury, the latter is not illegal or usurious. *Cuthbert* v. *Haley*, 8 T. R. 390 ; *Bearce* v. *Barstow*, 9 Mass. 43, 48 ; *Powell* v. *Waters*, 8 Cowen, 669 ; *Kent* v. *Walton*, 7 Wend. 256 ; *Houghton* v. *Payne*, 26 Conn. 396.

This rule is recognized by the Supreme Court of Iowa. Thus, in *Wendlebone* v. *Parks*, 18 Iowa, 546, it was held in substance that when the maker of a usurious note, which was secured by a deed of trust, borrowed money of a third party to pay the same, and instead of executing new securities for the money so borrowed, caused the note to be transferred by the payee to the lender as evidence and security for the new debt, the note was not tainted with usury in the hands of the second holder.

The authorities cited are conclusive against Call on both the grounds noticed. As the propositions upon which Palmer relies to defeat the plea of usury have both been sustained by the Supreme Court of Iowa while the present law against usury was in force, it is unnecessary to construe or discuss the statute. The result of the decisions of the Supreme Court of the State is, that there is nothing in the statutes of Iowa which upon the facts of this case, is a bar to the relief demanded by Palmer in his bill.                    *Decree affirmed.*