AMERICAN FREEHOLD LAND MORTG. CO. OF LONDON, Limited, v. WHALEY et al.

(Circuit Court, D. South Carolina. June 21. 1894.)

1. USURY—COMMISSIONS FOR PROCURING AGENT INCLUDED IN LOAN.

A lawyer, advertising money to loan, through whom is made a written application for a loan, giving full description of the property with abstract of title, and the banking company to whom he sends the papers, who negotiates the loan with one of several mortgage companies with whom it deals, without preference, receiving no compensation therefor, will not be held agents of the mortgage company loaning the money, so as to render the mortgage usurious because 20 per cent. commissions, for negotiating the loan, were divided between the banking company and the lawyer, where the representatives of both companies through whom the loan was negotiated deny any relation of principal and agent, or that the mortgage company had any interest in or knowledge of the commissions, or that the banking company had any interest in the mortgage company, or negotiated loans therefor, and where it appears that the money was not paid over to the banking company, to be forwarded, until after the loan was accepted, though the banking company had for collection the notes given for the loan and the lawyer, who also certified to the title, paid off existing incumbrances, and procured the property to be insured.

2. SAME—COVENANT FOR ATTORNEY'S FEES.

A provision in a mortgage that, in case of foreclosure either under the power of sale or by action, an attorney's fee of $500 shall become due immediately on notice of sale or on service of summons (the mortgage being for $5,000), is controlled by a provision in the note which it was given to secure that, in case of suit, 10 per cent. on principal and interest shall be allowed as counsel fees, and does not render the transaction usurious, the payment being contingent upon breach of the contract.

This was a suit by the American Freehold Land Mortgage Company of London, Limited, against J. J. Whaley and P. W. Farrell, for foreclosure of a mortgage.

John T. Sloan, Jr., and Allen J. Green, for complainant.
McCradys & Bacot and W. R. Kelly, for defendants.

SIMONTON, Circuit Judge. When the facts of this case are clearly understood, the legal questions involved in it are easily solved. W. H. Duncan, Esq., a member of the bar, residing in Barnwell county, S. C., put in his county paper an advertisement, "Money to lend in sums from $500 to $500,000, on five years' time." He was not a capitalist himself, but was the correspondent of the

Corbin Banking Company, a firm in New York City. His method was this: When any person desired a loan, he was presented with a printed form of application, containing 47 questions, directed to information as to the quantity and kind of land on which the money was to be borrowed, the improvements thereon, its productive capacity, how it was cultivated, whether by the owner or by tenants, the length of time during which it had been cultivated, and the number of years the applicant himself had cultivated it, its distance from a railroad,—in short everything which could enable one at a distance to form a true estimate of its value. To this was attached a diagram of the land, concluding with the statement that, if the application is negotiated by Duncan, it will be on the representations contained in the application, which are affirmed to be true, and made to be used by Duncan, as his agent, in procuring the loan. Contemporaneously with the application, the person desiring the loan signed a paper stating the fact that he had that day employed Duncan to negotiate a loan for him, stating the amount and rate of interest upon a mortgage of the property, describing it, to secure a note, and then promising in case Duncan succeeded in negotiating the loan within 30 days, upon the usual conditions exacted by eastern money lenders as to security, perfecting title, insurance, etc., to pay Duncan a fixed sum in full of his commissions and of the commissions of those whom he shall employ to assist him in making the negotiation; also, an agreement to furnish abstract of title, and to pay the fee for recording the mortgage. On receipt of this application, duly filled out, Duncan sent it on to the Corbin Banking Company, who with it negotiated a loan with some money lender, such as the American Freehold Land Mortgage Company of London, Limited, the Security Mortgage Company, the Dundee Investment Company, the American Mortgage Company of Scotland, Limited, the New England Mortgage Security Company of Connecticut, the Union Banking & Trust Company of London, Limited, and sometimes from individuals. Of these the most business was done with the Union Banking & Trust Company of London. No more business was done with this complainant than with the others. When the loan was negotiated and accepted, the Corbin Banking Company sent back to Duncan the abstract and the mortgage, with the note it was intended to secure, prepared for signature and execution, and their check for the amount of the loan. The contract was then concluded, and the mortgage recorded. The defendant J. J. Whaley was a neighbor and friend of W. H. Duncan. He met the latter at a railroad meeting held in the latter part of December, 1886, or the early part of January, 1887. During the course of conversation, he mentioned that he was in need of money because a mortgage he had given on his farm to a Scotch mortgage company for some $2,000 and upward was called in, and he owed some small debts. Duncan said he could get the money for him, and Whaley told him to go ahead and get it. Duncan then prepared an application by filling up the printed form above described, in which every question was answered, and this was signed by Whaley, 12th January, 1887. He asked for a loan of $5,000, for

five years. At the same time he signed the separate agreement in the form above referred to, reciting that he had employed Duncan to negotiate a loan for him for $5,000 for five years, interest at the rate of 8 per cent. per annum, and consented in case of success to pay Duncan $1,000 in full of all of his commissions and the commissions of those whom he employed to assist him. This application had printed on its back the words: "Received by Corbin Banking Company." Duncan did send it on to this company, by whom it was received on 17th January, 1887. The application was accompanied by a full abstract of title, made and certified to by W. H. Duncan, as an attorney at law, and in both was mention made of an existing incumbrance by way of mortgage to the Scotch mortgage company, of which one Palmer was agent. The Corbin Banking Company, on receipt of this application, presented it and the abstract to the American Freehold Land Mortgage Company of London, Limited, and negotiated a loan of $5,000 with the agent and representatives of that company in New York City. The loan was approved. On 19th February, 1887, J. J. Whaley executed his promissory note to the American Freehold Land Mortgage Company of London, Limited, in the words and figures following:

"$5,000.00                    Blackville, S. C., Febry. 19th, 1887.

"On the nineteenth day of February, 1892, promise to pay the American Freehold Land Mortgage Co. of London, Limited, or order, at the office of the Corbin Banking Company, New York City, five thousand dollars. in the gold coin of the United States of the present standard of weight and fineness, with interest from this date, at the rate of eight per cent. per annum, payable annually, as per 5 interest notes hereto attached, value received. Should any of said interest not be paid when due. it shall bear interest at the rate of ten per cent. per annum from maturity; and, upon failure to pay any of said interest within thirty days after due, said principal sum may, at the option of the holder of this note, be declared due, without notice, and may thereupon be collected at once, time being of the essence of this contract; and, in case this note is collected by suit, agree to pay all costs of collection, including ten per cent. of the principal and interest as attorney's fees. It is expressly agreed and declared that this note is made and executed under and in all respects to be construed by the laws of the state of South Carolina, and is secured by mortgage of even date herewith, duly recorded.

"No. 42,538.                                            J. J. Whaley."

Coupons were attached to this note; and on the same day he executed the mortgage (an exhibit to the bill) to secure said note to the said land mortgage company. This mortgage was duly recorded 28th February, 1887, in the proper office of Barnwell county. On the 19th February, 1887, Whaley gave a receipt to the Corbin Banking Company for $5,000, proceeds of loan negotiated by them for him with the American Freehold Land Mortgage Company of London, Limited, less commissions as agreed. These commissions were 20 per cent., of which the Corbin Banking Company took 15 per cent. and Duncan got 5 per cent. The agent of the Corbin Banking Company who negotiated this loan, and the agent of the American Freehold Land Mortgage Company with whom this negotiation was made, distinctly and unequivocally deny that any relation of principal and agent existed between the banking company

and the mortgage company, or that any other relation existed between them than that of one who, having money to lend, lent it on the application of the other in due course of business as a business transaction wholly. The mortgage company had no interest whatever in the commissions of the banking company. The banking company had no interest in the money of the mortgage company, and no connection with the transaction whatever other than the purchaser at par of an approved security. So far as the agent of the mortgage company knew,—and he says he is in a position to know, —W. H. Duncan had no relations of agency whatever with the mortgage company. The mortgage contained a power of sale in the mortgage in case of default, and provided for the payment in case of such sale of all counsel fees, premiums of insurance, and costs and charges of such sale. The money lent came through Duncan from the Corbin Banking Company. He first took up the Scotch company mortgage, $2,497; paid, at Whaley's request, certain debts owed by the latter in Blackville, giving therefor checks payable to Whaley's order; retained $50, to pay insurance; and gave him a small balance left. Afterwards he returned all of the $50 but $12, saying he could not effect insurance. The Corbin Banking Company got from the mortgage company $5,000, of which $4,000 was all that Whaley got the use of. Several coupons on the note were paid by Whaley by remittance to the Corbin Banking Company. At last he defaulted, and this bill was filed for the foreclosure of the mortgage.

The defense to the action is usury. On its face, this contract is not usurious under the law of South Carolina. To taint it with usury, there must have been an intention on the part of the mortgagee knowingly to contract for or take usurious interest. Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301. There can be no doubt that when one negotiates a loan through a third party with a money lender, and the latter bona fide lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission, the intermediary having no legal or established connection with the lender or agent. Fowler v. Trust Co., 141 U. S. 385, 12 Sup. Ct. 1; Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841; Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301. It is also the established law that when an agent authorized to lend money for his principal exacts, without the knowledge or authority of such principal, money from the borrower for his own benefit, this does not make the contract usurious. Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301. But when a lender authorizes his agent to make loans for him under a general arrangement that he must look to the borrower for his compensation, and such agent, for the lender, effects a loan, and charges the borrower a commission, this will make the contract usurious, whether the lender knew of the charge or not (Fowler v. Trust Co., 141 U. S. 385, 12 Sup. Ct. 1); for this exaction is by the authority of the lender, the principal.

The question in this case, therefore, is, were the Corbin Banking Company or Duncan, both or either, agents of the American Free-

hold Land Mortgage Company of London, Limited, the mortgagee complainant in this case? This was the controlling fact in Bates v. Mortgage Co., 37 S. C. 90, 16 S. E. 883; in Brown v. Brown, 38 S. C. 173, 17 S. E. 452; in Sherwood v. Roundtree, 32 Fed. 122; and in Security Co. v. Gay, 33 Fed. 636. The direct testimony bearing on this point is this: W. G. Wheeler, who transacted the business for the Corbin Banking Company, after stating that the banking company lends no money of its own, but acts simply as brokers to procure, if possible, for borrowers, as agents for such borrowers, comes to this transaction in question. He swears that there was no connection or business arrangement between the banking company and the mortgage company; that the banking company did not negotiate and place loans for the mortgage company; that the banking company is not paid by the mortgage company; that the mortgage company knows nothing about the compensation of the Corbin Banking Company, either as to the amount received by it, if any, or from whom it was received. James K. Sherwood, who was the representative of the mortgage company in this country, swears with equal directness and positive certainty to the same effect. Duncan died before this suit was brought. This is all the direct evidence. The witnesses have not been impeached. The testimony of witnesses, although their character has not been attacked, can be compared, however, with the testimony of other witnesses, and, indeed, with admitted facts in the case, and may be overborne by these. When, however, it is proposed to contradict the direct testimony of unimpeached witnesses by inferences from facts, this result cannot be reached unless the existence of these facts and the natural inferences from them cannot be reconciled with the conclusion that the direct evidence is true.

There are certain facts in this case which it is claimed show that Duncan and the Corbin Banking Company were really acting for the mortgage company, and that they bore the relation of agents to the mortgage company as principal. The money was paid to the Corbin Banking Company. If the money had been placed in the hands of the banking company, anterior to the negotiation of the loan, to be invested by it for the mortgage company, then this fact would be almost conclusive, under Fowler v. Trust Co., supra; for, whether the lender knew or not that its agent was charging the borrower, it did know that its agent was not compensated by it. As the universal presumption in business is that something is never done for nothing, the principal knew that his agent must be paid by the only other party interested,—the borrower. The testimony has been carefully examined, and the dates compared. There is no reason to believe that the mortgage company parted with the money until it accepted the offer, and had bound itself to make the loan after inspection and examination of the abstract of title. So, also, if the Corbin Banking Company invariably placed their loans with this American Land Mortgage Company, the conclusion would be almost irresistible that there was a business connection between them; or, if the mortgage company was the principal lender in loans made by them, the conclusion would not be so strong, indeed, but it

would be a strong circumstance adding to other suspicious circumstances in the case. But the evidence is that the Union Banking & Trust Company of London dealt most frequently with the Corbin Banking Company, and that business of no other character was done with these complainants than with the long list of other money lenders. The mortgage company must have put into the hands of the banking company the money lent, before it received the mortgage. But this, of itself, would not constitute the banking company agent of the mortgage company in effecting the loan. Indeed, that had been effected already. In order to complete it, inasmuch as the mortgagor resided in South Carolina and the mortgagee was in New York, it was necessary either that the mortgagor should execute his mortgage without receiving the money, or the money should be placed somewhere to be delivered contemporaneously with the execution of the mortgage. It was not unnatural—surely, it is not a suspicious circumstance—that the mortgage company should be willing to intrust this to the Corbin Banking Company, a prominent and well-known banking house. Indeed, something similar to this is done in every transaction involving the lending of money. The money did not get into Whaley's hands until the mortgage to the Scotch mortgage company was satisfied by Duncan. This was for the benefit of the mortgagee. True. But Duncan, as attorney at law, had examined the title, made the abstract, recommended the title, and had given the certificate. He was personally liable for the removal of incumbrances. When he satisfied this former mortgage, he primarily relieved his own personal liability, and his act was his own act, done for himself. So, also, with the insurance. Duncan had not only signed as attorney; he certified to the facts as inspector. He was bound to see this contract of insurance carried out, and he did this for his own protection. Whaley paid the interest on his note, which was the property of the mortgage company, to the Corbin Banking Company, and took their receipt, although the coupons were payable to the order of the mortgage company. This seems to lead to the conclusion that the banking company, being thus the agent of the mortgage company in part of the transaction, was its agent in the whole transaction. But this conclusion is not inevitable. The Corbin Company is engaged in the general business of banking, and the collection of money is a large part of that business. The debtor resided in South Carolina,—a farmer,—away from the centers of trade. The creditors reside in New York City. Sending the money through a banker was a protection for the debtor, a convenience for the creditor. The coupons are all made payable at the banking house of Corbin Banking Company. This may—indeed, must—have facilitated the loan. It is difficult to consider the questions in this case without realizing a strong inclination to assist the defendant. It seems monstrous to hold him for a debt of $5,000 when he got only $4,000. Yet he is a man of age and experience. He knew exactly what he was doing. He was being pressed by a mortgage which he could not pay. He saw a mode of relief. He counted the cost. His southern blood made him sanguine of meeting it in the future, and he assumed it.

The learned counsel for the defendant presses another ground for concluding that this transaction was usurious. Among the provisions of the mortgage is one covenanting that in case of foreclosure of the mortgage, either under the power of sale or by an action, an attorney's fee of $500 shall become due from the mortgagor to the mortgagee, immediately on notice of the sale in the first instance, or on service of the summons in the other. The note provides that, in case of suit, 10 per cent. on principal and interest shall be allowed as counsel fees. This will explain and control the language of the mortgage. Montague v. Stelts, 37 S. C. 212, 15 S. E. 968, where such a charge was sustained. The sum of $500 is not interest or discount, nor is it to be, at all events; but the liability for it is wholly on a contingency,—a breach of the contract. It is somewhat in the nature of liquidated damages, and comes within the principle of Norward v. Faulkner, 22 S. C. 371, and Williams v. Vance, 9 S. C. 374. The fact, also, that its payment, or the right to its payment, depends wholly upon a contingency, prevents it from being usurious. Says the supreme court of the United States in Spain v. Hamilton's Adm'r, 1 Wall. 626: "The payment of anything additional depends upon a contingency, and not upon any happening of a certain event, which of itself would be deemed insufficient to make a loan usurious."

Let an order of reference be taken to ascertain the amount due under this note and mortgage, in accordance with this opinion.