In re KELLOGG.

(District Court, W. D. New York. January 27, 1902.)

No. 448.

1. BANKRUPTCY—PROPERTY VESTING IN TRUSTEE—MORTGAGED REALTY.
    Wherever a bankrupt holds the legal title to mortgaged property when the adjudication is made, it will pass into the custody of the bankruptcy court, and, by operation of law, the title of the bankrupt will vest in the trustee as of the date of such adjudication.

2. SAME—ESTATE OF MORTGAGOR—WHAT LAW GOVERNS.
    The estate of a mortgagor in mortgaged premises situated in New York must follow the rules laid down by the state tribunal.

3. SAME—NATURE OF MORTGAGE—ESTATE CREATED.
    A mortgage on real estate in New York has none of the characteristics of a conveyance, but is merely a chose in action, giving the mortgagee no legal estate in the land, but merely a lien on the property.

4. SAME—JURISDICTION OF BANKRUPTCY COURTS.
    The jurisdiction conferred on bankruptcy courts by Bankr. Act, § 2, subd. 7, giving them jurisdiction to cause the estate of bankrupts to

be collected and distributed, and to "determine all controversies in relation thereto, except as herein otherwise provided," depends—First, on whether the controversy has reference to property actually in the possession of the bankruptcy court or belonging to the bankrupt estate; second, whether it arises in the bankruptcy proceedings, and the property becomes, therefore, subject to distribution to creditors; or, third, whether, by the nature of the controversy, power is conferred on the court to determine conflicting liens and apportion assets.

**5.** SAME—DETERMINING VALIDITY OF MORTGAGE.

Where mortgaged property owned by a bankrupt is in the custody of the bankruptcy court, and the legal title thereto is lawfully held by the trustee in bankruptcy as a part of the bankrupt's estate, the federal district court has jurisdiction to hear and determine a question as to the validity and amount of the mortgage lien.

**6.** SAME—RIGHT OF TRUSTEE TO PLEAD USURY.

Where a trustee in bankruptcy sues to set aside a fraudulent conveyance by the bankrupt, and the fraudulent grantee thereupon conveys the property involved to the trustee, the latter stands in the same relation to a mortgage thereon executed by the bankrupt as the bankrupt himself, and, therefore, though the defense of usury is personal to a borrower, may attack it as invalid on that ground.

**7.** SAME—KNOWLEDGE OF USURY.

A mortgage which expressly provides for the payment of lawful interest will not be invalid for usury unless exacted with the knowledge of the lender as a condition of the loan.

**8.** SAME.

Where a loan is negotiated by an agent of the lender, it must be established by proof that the lender knew, or must be presumed to have known, that usury was exacted.

**9.** SAME—DEVICE TO COVER USURY.

The inhibition of the statute against usury follows the making of a contract with a third person, where it appears to have been a mere device to cover the unlawful undertaking, and that such scheme was in contemplation of the parties.

**10.** SAME—RIGHTS OF BONA FIDE HOLDER.

Under the laws of New York, a mortgage void for usury in its inception is not valid in the hands of a bona fide holder.

**11.** SAME—MORTGAGE ADJUDGED USURIOUS.

A bankrupt who had received but $15,000 on a $25,000 mortgage thereafter agreed in writing to pay the mortgagee's agent, who negotiated the loan, and who was the brother of the mortgagee's husband, 5 per cent. on the gross sales of her business, on the agent's assurance that otherwise no more money would be forthcoming. A new mortgage was then executed for the same amount as the first, and the remaining $10,000 paid. Afterwards the mortgage was assigned to the mortgagee's mother-in-law. The evidence showed a community of interest. *Held* sufficient to show an intent to exact usurious interest on the part of the mortgagee, and that a finding that the mortgage was void in its inception was therefore supported.

**12.** FAILURE TO PRODUCE WITNESSES—EFFECT.

Where a party has it in his power to produce a material witness, and fails to do so, a presumption arises that the testimony would be unfavorable to him.

In Bankruptcy.

See 112 Fed. 52.

Frank H. Robinson, for trustee and creditors.

Pierre M. Brown, for mortgage creditor.

HAZEL, District Judge. On March 1, 1901, Clara E. Kellogg was adjudged a bankrupt on her voluntary petition. A temporary

receiver of her property was appointed by this court on the same day. Thereafter, at a meeting of creditors, the receiver was appointed trustee. Immediately after his qualification, the trustee commenced an action against the C. E. Kellogg Company, a Delaware corporation, to set aside, as a fraud on creditors, a transfer of property made to that company by the bankrupt January 29, 1901. On the same day that the case was commenced, the Kellogg Company, by its board of directors, rescinded its transfer, and reconveyed the property to the trustee. On June 6, 1900, the bankrupt executed and delivered to Una R. Goslin a mortgage upon this same property, consisting of real estate, which included an extensive planing mill plant. The amount secured by the mortgage was $25,000. The transfer to the Kellogg corporation was made subject thereto. Subsequently, on March 20, 1901, Sophie M. La Grave, of Paris, France, to whom Mrs. Goslin assigned the mortgage, instituted a suit in the supreme court of the state of New York to foreclose it. The trustee thereupon filed in this court a petition praying for an order directing that the assets in his actual possession, including the property mortgaged as hereinbefore stated, be sold free from all incumbrances, and that all liens should be transferred to the proceeds of the sale, their validity and amount to be determined by the bankruptcy court. Notice of this application was given to all creditors, and on the return day proof was made by the mortgagee, Mrs. La Grave, as to the consideration of the mortgage and her status as a lienor. She objected to the jurisdiction of the court, on the ground that the referee had no power to determine in a summary proceeding the question of the validity of the mortgage, and maintained that the validity of the lien could only be determined by plenary suit commenced by the trustee in the proper state tribunal against the holder of the mortgage. The objection was not sustained by the referee. Proofs were then taken, both parties being heard, tending to show that the mortgage lien was usurious in its inception. The referee found that the bankruptcy court had acquired complete jurisdiction over the res; that the lien was asserted to property, title of which was vested in this court, and in the actual possession of the trustee; the transfer to the Kellogg corporation was in fraud of creditors, and therefore the trustee, on reconveyance of the property to him, stood in the same relation to the mortgage as the bankrupt. The referee also found, from all the evidence in the case, that the circumstances conclusively justified an inference that the mortgage executed by the bankrupt to Mrs. Una R. Goslin was invalid for usury. The comprehensive opinion of the referee is found in 6 Am. Bankr. R. 389.

The questions for review are as follows: (1) Is the defense of usury available to a trustee in bankruptcy as against an obligation of the bankrupt? (2) Can the question of validity and amount of a mortgage lien upon property in the bankrupt estate be determined in a summary proceeding before a referee? (3) Did the supreme court of the state of New York acquire jurisdiction of the property, to the exclusion of the United States district court, by

the filing of the summons, complaint, and notice of pendency of action in foreclosure before the trustee was appointed, the bankruptcy court having previously acquired jurisdiction by the filing of the petition in bankruptcy and the appointment of a receiver, who had qualified and taken possession of the property prior to the commencement of said action of foreclosure? (4) Where the mortgagor, with intent to hinder and delay her creditors, conveys the mortgaged property to a corporation participating in such intent, and the trustee repudiates such transfer on account of such fraud, and takes possession of the property, and by mutual consent the fraudulent grantee and the trustee rescind such conveyance, does the fact that the property upon which the mortgage was an apparent lien was transferred by the mortgagor to the said corporation, after the recording of the mortgage and subject to the lien thereof, before the beginning of the bankruptcy proceedings, preclude the trustee from pleading usury? (5) Was the mortgage void for usury as a matter of fact?

The second and third questions may be considered together. At the outset, therefore, it is important to inquire of what did the estate of the bankrupt consist at the time of the adjudication. Assuming that the bankrupt, Mrs. Kellogg, held the legal title to the mortgaged property in question when adjudication was made, it passed into the custody of this court, and therefore, by operation of law, the title of the bankrupt vested in the trustee as of the date of such adjudication. The estate of the mortgagor or mortgagee in mortgaged premises within the state of New York must, of course, follow the rules laid down by the state tribunal. In re Novak, 7 Am. Bankr. R. 27, 111 Fed. 161. A mortgage on real estate in the state of New York has none of the characteristics of the conveyance, but is merely a chose in action, giving no legal estate in the land, but entitling the owner of the mortgage to a lien thereon, as security for the debt thereby secured. Trimm v. Marsh, 54 N. Y. 599, 13 Am. Rep. 623. The property was therefore protected from any action which might have been taken other than in a suit instituted to foreclose or establish a lien of the mortgage. The entire property, subject to whatever lien Mrs. La Grave possessed, came within the control of the court of bankruptcy. This court had undoubted authority, after an adjudication in bankruptcy, to stay the foreclosure suit commenced by Mrs. La Grave. No less had it authority to direct a sale by the trustee in bankruptcy free and clear of all liens and incumbrances, and transfer a lien to the proceeds. In re Worland, 1 Am. Bankr. R. 450, 92 Fed. 893; In re Pittelkow (D. C.) 92 Fed. 903. The purpose and object of the bankrupt act is to vest such power and authority in the courts of bankruptcy, at law and in equity, as will give jurisdiction to carry out and enforce the provisions of the act. By subdivision 7 of section 2, jurisdiction is conferred to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided." The claim, therefore, that this court has jurisdiction must be based upon the authority conferred on it by clause 7 of section 2. The

supreme court said in Bardes v. Bank, 178 U. S. 535, 20 Sup. Ct. 1005, 44 L. Ed. 1175:

"The chief reliance of the appellant is upon clause 7, § 2. But this clause, in so far as it speaks of the collection, conversion into money, and distribution of the bankrupt's estate, is no broader than the provisions of section 1 of the act of 1867, and in that respect, as well as in respect to the further provision authorizing the court of bankruptcy to 'determine controversies in relation thereto,' it is controlled and limited by the concluding words of the clause, 'except as herein otherwise provided.'"

The court then said the clause providing that United States circuit courts shall have jurisdiction of all controversies at law and in equity, etc., "indicated the intention of congress that the ascertainment, as between the trustee in bankruptcy and a stranger to the bankruptcy proceedings, of the question whether certain property claimed by the trustee does or does not form part of the estate to be administered in bankruptcy, shall not be brought within the jurisdiction of the national courts solely because the rights of the bankrupt and of his creditors have been transferred to the trustee in bankruptcy."

In Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, the supreme court said, quoting section 2, subd. 7, and the words, "except as herein otherwise provided":

"The exception refers to the provisions of section 23, by virtue of which, as adjudged at the last term of this court, the district court can, by the proposed defendant's consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy against third persons to recover property fraudulently conveyed by the bankrupt to them before the institution of proceedings in bankruptcy. Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175."

This last sentence from the Bernheimer Case, particularly in view of the fact that elsewhere in the opinion the court limits the application of the Bardes Case, would seem to clearly indicate the scope of the Bardes Case upon the point at issue. It is clear that the decision of the supreme court is that controversies not strictly or properly part of proceedings in bankruptcy should not come within the jurisdiction of the district courts of the United States without the consent of the proposed defendant. Now, what are controversies of that nature? The court removes all doubt by declaring, in unmistaken language, that such controversies have reference to independent suits brought by the trustee in bankruptcy to assert title to money or property as assets of the bankrupt against adverse claimants. Such suits obviously are actions brought to set aside fraudulent transfers, and to recover property of the bankrupt wrongfully withheld by a third person. But, where the property is in the actual possession of the court, the right to decide conflicting claims is paramount, if not inherent, in the court first acquiring possession. Counsel for the mortgagee contends that this is a controversy between the bankrupt and an adverse claimant, and that a summary proceeding, in which a trustee assails the title to property held by him, or the validity of a lien against it, is just as much a controversy between the trustee and an adverse claimant as an action brought against a third party holding the property adversely, and therefore is not cognizable by the

bankruptcy court in any form of action or proceeding. But the case at bar is clearly distinguishable from the cases cited by counsel. The proceeds of the sale of the mortgaged property, indeed the property itself before the sale was directed by the bankruptcy court,—the mortgaged property,--was in the custody of that court. It was part of the res over which this forum gained control by virtue of the adjudication in bankruptcy. It was held by the trustee as part of the bankrupt's estate, and the district court, therefore, had jurisdiction to hear and determine the issues presented in the nature of a claim to, or lien upon, the assets of the bankrupt estate. White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; In re Whitener, 44 C. C. A. 434, 105 Fed. 180; In re Matthews (D. C.) 109 Fed. 603. It may be quite true that the trustee, in the exercise of discretion, had a right to institute an action in the proper tribunal to annul the mortgage on account of its invalidity due to its usurious origin. But, manifestly, where two remedies are open to a trustee, one affording relief in the forum creating his trust, and pointing out a very simple and less expensive method of attaining his end than is attainable by the other, then the trustee's duty is to pursue that remedy according to the nature of the controversy, where congress intended such remedy or procedure should be instituted. In re Baudouine, 3 Am. Bankr. R. 651, 101 Fed. 574, cited by counsel for mortgagee, is clearly distinguishable from the case at bar. There a trustee in bankruptcy claimed that the income to which the bankrupt was entitled as a beneficiary of a trust created by will was applicable to the payment of the bankrupt's creditors, and therefore instituted proceedings against the bankrupt and testamentary trustee in the bankruptcy court to compel the payment to him of such funds. The bankrupt's interest in the estate was merely in the nature of a chose in action against the testamentary trustee who held funds under and by virtue of his trust. These trust funds never came into the possession of the bankruptcy court. Judge Wallace, speaking for the circuit court of appeals, in that case said:

"The language of clause 7 would seem to be sufficiently comprehensive to authorize the determination by courts of bankruptcy of every controversy relating to the estates of bankrupts. * * * Nevertheless, it is capable of a narrower construction, and can be read as extending only to controversies about property which actually belongs to the bankrupt's estate, or which arise strictly in the bankruptcy proceeding, such as those in reference to the marshaling of assets, or the extent and priority of conflicting liens."

In the light of this decision, considering the scope of section 2, subds. 6, 7, of the bankrupt act, the jurisdiction here depends upon (1) whether the controversy is one having reference to property actually in the possession of the bankruptcy court or belonging to the bankrupt's estate; or (2) whether it arises in the bankruptcy proceeding, and the property in question, therefore, becomes subject to distribution to creditors; or (3) whether by the nature of the controversy power is conferred on the court to determine as to conflicting liens and apportion assets. No application was made to the court to restrain the sale of the property by the trustee, nor to require him, in the interest of the mortgagee, to interpose a possible

defense in the foreclosure suit instituted in the state court. Had such an application been made, it may well be that the court, in the exercise of its discretion, because of the character of the defense and the existing conditions, would have directed the trustee to interpose any defense to the validity of the mortgage in the state court where the suit had been commenced. This course not having been adopted, and the mortgaged property or its proceeds being in the actual custody of the trustee, all persons interested in the res, including lienors and mortgagees, became parties to the bankruptcy proceeding. Carter v. Hobbs, 1 Am. Bankr. R. 215, 92 Fed. 594. The property or interest in property claimed under such circumstances, although adverse to the bankrupt or in hostility to the trustee and general creditors, must be adjudicated by the district courts in the manner pointed out by subdivisions 6 and 7 of section 2 of the bankrupt act. In re Pittelkow, supra, and cases cited; In re Whitener, supra; In re Russell, 41 C. C. A. 323, 101 Fed. 248. The circuit court of appeals for this circuit, in Re New York Economical Printing Co. (C. C. A.) 110 Fed. 514, had before it a case where a chattel mortgagee of the bankrupt laid claim to the funds in the bankruptcy court realized from a sale of the mortgaged property pursuant to an order of the bankruptcy court. There the bankruptcy court had, as in the case at bar, directed the mortgaged property in its custody to be sold, and provided that all liens upon the property should attach to the proceeds. The circuit court of appeals then disposed of the validity of the chattel mortgage as against the proceeds. Manifestly, this principle applicable to the proceeds realized on sale of personal property upon which there was a chattel mortgage certainly applies in a case where real estate was sold free of incumbrances by order of the bankruptcy courts, and the order provides that all liens on the property should attach to the proceeds. The question of the validity of the mortgage in question here was not determined upon a mere motion or affidavits. A full hearing was had before the referee, and the mortgagee had abundant opportunity to present all possible evidence in support of the validity of her lien.

Since writing the foregoing, the court's attention is called to memorandum of opinion by the circuit court of appeals for the Ninth circuit, in Re San Gabriel Sanatorium Co. (C. C. A.) 111 Fed. 892 (Jan. 7, 1902), where it is held that the district court was right in granting leave to the mortgagee to make the trustee in bankruptcy a party defendant to the foreclosure suit commenced in the state court, and in denying trustee's application to restrain the foreclosure suit. The syllabus states that "the bankruptcy act does not confer upon a district court of the United States as a court of bankruptcy jurisdiction of a controversy between a trustee and a mortgagee of the bankrupt to determine the validity of the mortgage unless with the consent of such mortgagee." An examination of the facts of this case, which appear where it is previously reported in 42 C. C. A. 369, 102 Fed. 310, discloses that the title to the property in question was not in the trustee at the time this question was before the court for determination. Therefore the jurisdiction was clearly lacking, under the doctrine of the Bardes Case, supra. The court is therefore of

the opinion that, inasmuch as the property was in the lawful possession of the trustee in bankruptcy and of the bankruptcy court, the district court is vested with jurisdiction to determine the question of validity and amount of a mortgage lien upon property in the bankrupt's estate, such as exists in the case at bar, and that the supreme court of the state of New York did not acquire jurisdiction of the property to the exclusion of the United States district court.

The question of usury must now be determined. It is quite true that usury is a personal defense to the borrower, and that grantees taking property subject to an existing mortgage cannot be heard to plead the invalidity of that mortgage because of its usurious origin. Merchants' Exch. Nat. Bank of City of New York v. Commercial Warehouse Co. of New York, 49 N. Y. 635; Bullard v. Raynor, 30 N. Y. 206; Insurance Co. v. Nelson, 78 N. Y. 150; Ord. Us. § 131; 27 Am. & Eng. Enc. Law (1st Ed.) 954; Hartley v. Harrison, 24 N. Y. 172.

In the case at bar the trustee stands in the place of the mortgagor, and, by express provision of the bankruptcy act, he is vested, immediately upon his appointment and qualification, with the title of the bankrupt to the mortgaged premises. He is empowered and it is his duty to have set aside transfers and incumbrances made in fraud of creditors. Section 67 of the bankrupt act provides that property conveyed by the bankrupt in fraud of creditors becomes, by virtue of the adjudication, a part of the assets of the estate. Conveyances made with intent to defraud creditors are declared to be null and void. The conveyance to the trustee by the Kellogg Company, a fraudulent grantee, therefore, places the trustee in the position of the original grantor and mortgagor, and the right to interpose a plea of usury is preserved. The agreement to pay usurious interest is not apparent from the mortgage in controversy, or from the contract whereby a commission of 5 per cent. is agreed to be paid from the gross earnings of the business carried on by the bankrupt. The mortgage expressly provides for the payment of lawful interest. It is essential, therefore, that it be proved either by direct proof or evidence circumstantial in its nature, leading to a conclusion beyond reasonable doubt that the intendment of the contract was to demand and receive a usurious exaction. It must be exacted with the knowledge of the lender as a condition of the loan. When a loan is negotiated by an agent of the lender, it must be established by proof that the lender knew or is presumed to have known that a greater sum was to have been paid for the loan or forbearance than is permitted by statute. The inhibition of the statute follows the making of a contract with a third party when it appears to have been a device and scheme to cover the unlawful undertaking, and that such scheme was in contemplation of the parties. Clarke v. Sheehan, 47 N. Y. 198; U. S. v. Waggener, 9 Pet. 378, 9 L. Ed. 163; Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301, 29 L. Ed. 559. The proofs show that $15,000 only was advanced on the execution and delivery of the first mortgage, dated in April, 1900. The remaining sum of $10,000 was withheld. A demand was made upon Miss Kellogg, the mortgagor, that she execute a contract of assignment of a one-third interest in

the business conducted by her at Canisteo, N. Y., to E. F. Goslin, who aided in negotiating the loan. Mr. Goslin is the brother-in-law of the original mortgagee, and son of the present holder of the mortgage. It was also demanded of Miss Kellogg that she pay to E. F. Goslin 5 per cent. of the gross sales of the business as a condition of the payment of the balance unpaid on the mortgage of April, 1900. Neither of these conditions was assented to at the time, but Miss Kellogg subsequently executed an agreement in writing embodying the latter arrangement. A new mortgage for $25,000 was made in place of the one already mentioned, and then the balance of $10,000 was paid at different times. Miss Kellogg testified that E. F. Goslin, who negotiated or aided in negotiating the loan, said "there would be no more money forthcoming"; that "they never loaned any money at 6 per cent., and never would"; and she needed the money, and, in order to obtain it, assented to the contract. This was not a new contract with a third party. The same persons who negotiated the original mortgage were instrumental in withholding the payment of the mortgage for which the mortgage stood security. It is clear that both transactions, the one relating to the first mortgage and the other to the mortgage now in controversy, as well as the intervening negotiations, are intimately connected; each of them is a part of the other. The conflict of evidence relating thereto has been resolved by the referee in favor of the trustee. He found that the circumstances of the transaction, as shown by the evidence presented, constitute the offense of usury. The evidence, and his conclusions thereon, are presented by him in an able opinion, with much fullness and painstaking. The court is of opinion that the effect of the entire transaction and of the circumstances surrounding it was to secure to the mortgagee, or the person who actually made the loan it represents, a greater rate of interest than 6 per cent. per annum. In Fiedler v. Darrin, 50 N. Y. 443, it is held that the intent is essential to constitute the offense of usury, and the court says:

"The intent must be deduced from, and determined by, the acts. The intent which enters into and is essential to constitute usury is simply the intent to take or reserve more than seven per cent. per annum for the loan or forbearance of money. There are cases in which an act is lawful or unlawful, depending upon the particular intent of the actor."

The 5 per cent. contract above described was evidently intended to cover the usurious act, and the condition incorporated therein, that E. F. Goslin was to act as the New York agent for the sale of lumber of Miss Kellogg, was a pretext and a cover to avoid the consequences of the unlawful exaction. The all-important questions in the case are whether the mortgagee had such knowledge of the acts of her representatives as to render her chargeable with them, or were the acts of the representatives and lender so interwoven as to justify a presumption of knowledge and participation on the part of the mortgagee? The mortgage and contract, the basis of this contention, must be governed by the laws of the state of New York. By the statutes of that state, it is declared that all securities whatsoever, whereupon or whereby there shall be reserved or taken a greater sum or value for a loan or forbearance of any money than

the rate of $6 upon $100 for one year, shall be void. Rev. St. N. Y. (9th Ed.) p. 1855. This statute has many times been construed by the highest court of the state. It is held that, where a usurious instrument is considered void in its inception, it will remain void in the hands of a bona fide holder. Webb, Us., § 183; Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716; Morgan v. Tipton, Fed. Cas. No. 9,809. It follows, therefore, that, if the mortgage was void for usury because of knowledge or participation in a usurious agreement on the part of Una R. Goslin, her assignment of the mortgage to an innocent holder for value will not remove the taint. The authorities also uniformly hold that a lender cannot be charged with taking unlawful interest when the transaction was completed by an agent, where the agent, for his own benefit, exacted more than the lawful rate, unless the lender had knowledge of the usurious acts of the agent. Call v. Palmer, supra; Barrietto v. Snowden, 5 Wend. 181; Condit v. Baldwin, 21 N. Y. 219, 78 Am. Dec. 137; Bell v. Day, 32 N. Y. 165; Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379. In the case last cited, Judge Earl, speaking for the court of appeals, said:

"The defense of usury, involving crime and forfeiture, cannot be established by mere surmise and conjecture, or by inferences entirely uncertain. If, upon the whole case, the evidence is just as consistent with the absence as with the presence of usury, then the party alleging the usury has failed."

These authorities, however, have no application here, other than to show the liability of the lender for the acts of the agent making a bargain prohibited by the statute because of usury, and to amplify the well-settled rule that the proofs to sustain a corrupt and usurious agreement shall be clear, convincing, and consistent with the presence of usury. The court has carefully weighed the circumstances of this case adduced by the evidence, and is reluctant to hold that the mortgage is invalid for usury, inasmuch as no usurious sum was paid, and because the bankrupt obtained and used in her business the sum borrowed, and the bankrupt estate has the benefit of the loan thereof. The evidence of the unlawful bargain, and the evident purpose and intent to evade the statute, is so clearly to be inferred that the court is constrained to concur with the referee on his finding that the mortgage was void and usurious at its inception. This finding rests upon substantial grounds. The wisdom of the usury statute is not to be questioned by a judicial tribunal. It is the duty of this court to enforce the law, and not to legislate. Where the proofs are clear and satisfactory, the court is bound to apply the remedy, without giving consideration to the drastic and penal features of the statute applicable to the facts under consideration. The proofs show with sufficient clearness that although the mortgage was executed in favor of Una R. Goslin, wife of A. R. Goslin, and subsequently assigned by her to Mrs. La Grave, her mother-in-law, that the loan was in fact made and controlled by her husband. He seems not to have been prominent in the negotiations for the loan and the execution of the usurious contract. That was left to the brother. He was, however, so connected with it as to preclude an innocent intent. It does not clearly appear whose money it was. The finding of the referee is that a

community of interest existed between the lender and those who negotiated the loan. The testimony offered by the mortgagee, that the contract was in consideration of E. F. Goslin acting as agent for Miss Kellogg, and that pursuant to the contract he transacted business as such agent, is not convincing, in the view that the court has taken that the entire transaction was a corrupt and unlawful scheme to evade the provisions of the usury statutes. The mortgagee had it in her power to produce witnesses by whose testimony any doubt with reference to the scope of the authority by which those who acted or presumed to act for her would have been removed. This she failed to do. No denial of complicity or community of interest is made. Neither Una R. Goslin, the original holder of the mortgage, nor E. F. Goslin, who aided in negotiating the loan, and for whose apparent benefit the usurious contract was made, has appeared to affirm the righteousness of the transaction and to remove the taint attached thereto. The fact that they possessed knowledge enabling them to clarify the transaction, and withheld it, must be considered against the holder of the mortgage. The rule is that, under such circumstances, a presumption is created that the testimony would be unfavorable. Graves v. U. S., 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021; Runkle v. Burnham, 153 U. S. 217, 14 Sup. Ct. 837, 38 L. Ed. 694; American Bell Tel. Co. v. National Tel. Mfg. Co. (C. C.) 109 Fed. 1018. Miss Kellogg testified that she never asked E. F. Goslin or A. J. De Kantstein to represent her, and that she never received any orders from them, and that, prior to her assenting to the contract to pay 5 per cent. commission, E. F. Goslin said that no more money would be forthcoming, and that they never loaned any money at 6 per cent., and never would. This evidence believed by the referee to be reliable and credible stood uncontradicted. Considerable evidence is also introduced in the case by the trustee to show the connection existing between the parties and the existence of the unlawful agreement. The silence of E. F. Goslin and Una R. Goslin, the mortgagee, must be considered against them upon the question of the alleged usurious contract. The inference which necessarily followed from the entire evidence with reference to Mrs. Goslin's knowledge of or acquiescence in the transaction must be construed against her. If she had no knowledge of the transaction, if what was done was without her acquiescence, it was her duty to herself to testify concerning thereof, if the truth was otherwise than as found by the referee. Her failure to testify deprived the trustee of an opportunity to show more clearly on her cross-examination that she had knowledge of her agent's acts. Obviously, her testimony might have dispelled all doubt with reference to her knowledge of the unlawful acts.

From the foregoing, it follows that the first, second, fourth, and fifth questions submitted for review are answered in the affirmative, and the third in the negative. The report of the referee is affirmed.