## DAN A. STUART v. TENISON BROS. SADDLERY COMPANY.

Decided June 10, 1899.

### 1. Usury—Exchange Added.

A stipulation for cost of exchange does not render usurious a note calling for the highest legal rate of interest, where the payee resides at a distance from the place of payment, and there is nothing to show that such stipulation was made to avoid the usury laws.

### 2. Same—Commissions to Agent.

Commissions paid to an agent for securing a loan do not render the transactions usurious where the one to whom they are paid is the agent of the borrower.

### 3. Same—Attorney Fees.

A note bearing the highest legal rate of interest is not rendered usurious by a provision for 10 per cent attorney fees, where the full amount so provided for went to the attorneys for making the collection.

### 4. Res Judicata—Injunction Suit—Usury.

A judgment denying plaintiff an injunction restraining a trustee from selling property under a trust deed on the ground that the note secured by it was usurious, is a bar to an action to recover the usurious amount involved, and which was paid after the injunction was denied.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

W. P. Ellison and Crawford & Crawford, for appellant.

McCormick & Spence, E. W. Hinton, and Dickson & Moroney, for appellee.

RAINEY, ASSOCIATE JUSTICE.—The following statement of the nature and result of the suit is taken from appellant's brief:

"This was a suit by appellant against appellee to recover usurious interest and attorneys' fees, alleged to have been wrongfully collected by appellee from appellant and paid under duress. It is not shown by the transcript of the record when the original petition was filed, but the original answer was filed on March 6, 1897.

"The amended original petition upon which the cause was tried was filed October 17, 1898, and alleges in substance: 'That on September 30, 1891, Murphy & Bolanz were engaged in the business of lending money for different clients, including one John Conley, who resided in the State of Missouri. September 30, 1891, appellant procured from John Conley, through Murphy & Bolanz, agents for said Conley, a loan of $10,000, for which he executed his note at two years, with interest at the rate of 10 per cent per annum, payable semi-annually; the principal and interest payable at the office of Murphy & Bolanz, Dallas, Texas, in gold coin, with exchange on New York. The note and four attached interest coupons bear 10 per cent interest after maturity. The note further provides, in case of default in the payment of any of the coupons for five days after the same shall become due, or in case of failure to comply with any of the conditions set forth in the deed of trust given to secure the note, the principal and all accrued interest shall, at

the election of the holder, at once become due, and may be collected by such holder, together with assessments, delinquent taxes, and premiums of insurance on the property conveyed by the deed of trust, together with all costs and 10 per cent additional on full amount due, as attorney's fees.   After the execution of the note and deed of trust appellant received $9500, the balance, $500, being retained by Murphy & Bolanz as commissions.   That the interest coupons, $500 each, were paid as they matured.   September 30, 1893, the note was extended for one year, appellant paying $500 interest and $100 to Murphy & Bolanz as a bonus. May 1, 1894, appellant paid $500 interest and $83 interest on the past due interest, and the note was extended to January 1, 1895.   That appellee, by negotiating with appellant for the purchase of the lot covered by the deed of trust, induced appellant to believe that appellee would purchase the same for $14,000.   While these negotiations were in process, appellee telegraphed Conley to come to Dallas, which he did, and in March, 1895, appellee, long after the maturity of the note, and with full knowledge of all the facts, purchased said note from Conley, and at once placed the same in the hands of McCormick & Spence, as attorneys, and caused J. P. Murphy, trustee, to advertise the property for sale on the first Tuesday in April, 1895.

" 'Before the purchase of the note by appellee, it, through E. O. Tenison, its agent, was negotiating with appellant for the purchase of the lot covered by the deed of trust, and appellant, by reason thereof, made no effort to sell to other parties, which he could and would have done but for the acts of appellee.   Without notice to appellant, and for the purpose of oppressing him and exacting payment of usurious interest and $1100 attorney's fees, appellant purchased the note from Conley, paying therefor, principal, interest accrued, and exchange.   That said note was usurious, which fact was made known to appellee.   That under protest and to prevent a sale of the lot, appellant, on April 1, 1895, paid to appellee the full amount of said note and attorney's fees, notwithstanding the fact that said note was usurious and no attorney's fees were due under the terms of the note.   That the fees collected were not in fact paid to the attorneys; that they in fact received not more than $250.   The note and deed of trust are made part of the petition.'

"October 17, 1898, defendant filed its first amended original answer: (1) general and special demurrers; (2) general denial; (3) plea of the statute of limitations of two years; (4) that in 1895 appellant applied to the Hon. R. E. Burke, judge of the District Court of Dallas County, for an injunction restraining the trustee from selling the lot, upon the ground that the note was usurious, and alleging the same grounds as now set up in the petition; that after hearing evidence and argument, the application was denied and judgment final rendered against appellant, from which no appeal has been prosecuted.

"To this answer appellant excepted, because said judgment was an interlocutory order simply refusing the injunction, and not a determination of the matters in controversy upon the merits.

"Under a peremptory instruction from the court, the jury returned a verdict for the defendant, upon which judgment was rendered for appellee. Motion for new trial overruled. Appellant excepts and gives notice of appeal to this court."

*Conclusions of Fact.*—On September 30, 1891, Dan A. Stuart executed to John Conley the following obligation: "Know all men by these presents, that I, Dan A. Stuart, single and unmarried, for value received (money borrowed), hereby promise to pay to the order of John C. Conley, of Boone County, Missouri, the principal sum of ten thousand and no-100 dollars in gold coin or its equivalent in currency of the United States, with exchange on New York, on the 30th day of September, 1893, at the office of Murphy & Bolanz, Dallas, Texas, with interest thereon from date until paid at the rate of 10 per cent per annum, payable semi-annually on the 30th days of March and September in each and every year according to the tenor and effect of four interest coupons of five hundred and no-100 dollars each, bearing even date herewith and attached to this note, and numbered from one to four, inclusive. This note and attached interest coupons bear interest after maturity at the rate of 10 per cent per annum until paid.

"It is expressly agreed by the maker hereof, that, in case of default in the payment of any of the said coupons for the space of five days after the same shall become due and payable, or in case of failure to comply with any of the agreements and conditions set forth in the deed of trust given to secure this note, to which said deed of trust special reference is hereby made as a part of this contract, then in such case the principal sum expressed in this note, with all accrued interest, shall, at the election of the legal holder or holders hereof, at once become due and payable without form or notice, and may be collected, with all legal assessments, delinquent taxes, or premiums of insurance on the property conveyed as security for the aforesaid debt, together with all costs and 10 per cent additional on full amount due as attorney's fee."

To secure the payment of the foregoing instrument the said Stuart executed a deed of trust to J. P. Murphy, as trustee, to a certain lot in the city of Dallas, the said conveyance containing the power to sell upon default in payment and other clauses usual in such cases.

The following facts pertinent to the matters under investigation we extract from appellee's brief, the same being supported by the evidence: "From 1884 to 1893, Murphy & Bolanz were real estate agents and loan brokers at Dallas, doing a very large and extended business. They were also engaged in the banking business. John C. Conley lived at Columbia, Missouri, and loaned out his money. He had business interests in Texas, and was generally in Dallas twice a year. In 1889, when he was in Dallas, Mr. Bolanz approached him with reference to getting him to lend money in Texas, and told him that 10 per cent interest could be obtained in Dallas on good security; that the borrower paid all expenses and no charge was made to the lender; at this time 12 per cent interest

could lawfully be charged. That if he wished to lend money at Dallas Murphy & Bolanz would go to see any property on which they submitted applications and investigate its value, and if he made loans, see that he did not get into any bad titles. When he left Dallas, Conley told Mr. Bolanz that if they had any real good gilt-edged loans to submit them to him, and that he would consider them. It was in September, 1891, that the loan to Stuart was made. Prior to that several applications had been sent in by Murphy & Bolanz to Conley for loans, three of which Conley had made. Two of these loans were made to the Alexders, and one consisted of the purchase of some notes executed by Schmucker. The Alexander loans were made about 1889 and 1890, and bore 10 per cent interest. Before making the Alexander loans Conley inspected the property offered as security. He was shown over the city by Mr. Bolanz, who gave him his opinion as to values, but Mr. Conley formed his own opinion. Mr. Conley always examined the property offered as security and passed on the values personally. Generally Mr. Bolanz was with him and showed him the security. Conley never had any money in the hands of Murphy & Bolanz with authority to loan. What money he had with them at any time was subject to his check alone. They had no authority to make loans for Conley. Collections for Conley were placed to his credit on the books of Murphy & Bolanz subject to his order. He never made any other deposits with Murphy & Bolanz. Murphy & Bolanz made several loans through Mr. Conley and of him, but never made any loans for him. When the question of Mr. Conley's first making loans was discussed with him he was told by Mr. Bolanz that no charge would be made against him for collecting the interest or principal when it became due. As an inducement for lenders to lend money to their customers, Murphy & Bolanz collected and remitted without charge. Dan A. Stuart lived at Dallas and was a man of large business experience. Some time in September, 1891, Stuart went to Murphy & Bolanz's office and told them he wanted to get a loan of $10,000 on some vacant property he owned on Commerce Street. He asked what the rate of interest would be, and was told that it would be 10 per cent, to which he agreed. He also asked Mr. Bolanz what their compensation would be in the matter, and was told that it would be 5 per cent. To all of this Stuart agreed. Bolanz did not tell Stuart from whom he would get the money, and did not then know from whom he would get it. A few days after this Mr. Conley came to Dallas and the proposed loan was submitted to him by Mr. Bolanz, who went with Conley to see the property. Conley finally agreed to make the loan if the title was satisfactory. Bolanz looked through the title himself, and it was then examined by Mr. W. P. Ellison, who was Mr. Stuart's regular attorney. There were some defects in the title, but these were cured, and Mr. Ellison said the title was all right. Mr. Bolanz told Mr. Conley that Mr. Ellison was a lawyer of good standing, and he thought it was safe to rely on Mr. Ellison's opinion. Stuart turned over the note for $10,000 and the deed of trust to Murphy & Bolanz, directing them

to deliver the same to Mr. Conley on the payment of the money, and directed Murphy & Bolanz to place the money to his credit and to charge him with their commissions. Mr. Conley examined the note and trust deed and finding them satisfactory paid the $10,000 to Murphy & Bolanz, who charged up their commission to Mr. Stuart. The balance of the loan was afterwards drawn from them by Mr. Stuart. Mr. Stuart never complained to Murphy & Bolanz that the interest was usurious or the commission unlawful or improper. At the time the Stuart loan was made Conley had a small balance to his credit with Murphy & Bolanz, the proceeds of collections that had been made, and for the balance of the amount needed to make up the sum of $10,000 he gave a draft on his Missouri bank to Murphy & Bolanz. Stuart paid the interest on his loan for the first two years with reasonable promptness, and at the time it became due he secured an extension for one year. He went to Murphy & Bolanz to get this extension, and they wrote to Mr. Conley, telling him that Mr. Stuart would like to get an extension, and Mr. Conley answered in a letter agreeing to an extension of one year, provided the interest was paid promptly and the taxes kept paid. For their services in getting this extension Stuart paid Murphy & Bolanz $100. No charge was made against Mr. Conley for it. Mr. Conley knew nothing of any charge being made for the extension.

"From 1891 to 1894 no attention was paid by Bolanz to the condition of the taxes on the Stuart property. About 1894 or 1895, while Mr. Conley still held the note, he wrote to them, asking about the taxes. They looked up the matter and wrote to him, probably making no charge for this. Murphy & Bolanz usually kept an eye out to see whether taxes, etc., were paid by borrowers for whom they had procured loans, and made no charge to anyone for such services. * * * During the life of the Stuart loan Mr. Conley acquired some property in Dallas. This was rendered for taxation for him by Murphy & Bolanz, who charged him therefor $2 per year. It was a benefit to Murphy & Bolanz to have collections deposited with them, as they were in the banking business and paid no interest on deposits. Murphy & Bolanz never charged Mr. Conley anything for collecting the interest on the Stuart loan. In 1893 Murphy & Bolanz failed, and the Murphy & Bolanz Land and Loan Company succeeded them in the real estate business. After this time the company charged Mr. Conley for making collections.

"There was no evidence as to any statement or agreement between Conley and Bolanz that Conley was to receive the highest rate of interest on his loans. The loans made prior to the Stuart loan were made at 10 per cent, although 12 per cent was then lawful. Conley knew that Murphy & Bolanz's business was for compensation, and he understood that the borrower paid all expense, but he knew nothing about the amount that was paid by Stuart to Murphy & Bolanz when the loan was originally obtained or when the extension was given. The usual commission paid for obtaining loans at Dallas at the time the Stuart loan was made was 5 per cent.

"In all loans negotiated by Murphy & Bolanz, where they drew the papers, J. P. Murphy was made trustee. In March, 1894, the Murphy & Bolanz Company negotiated a sale of the note to the Tenison Bros. Saddlery Company, and for this Mr. Conley paid them $100, said amount being agreed upon in advance. Murphy & Bolanz submitted a number of applications for loans to Mr. Conley, which were rejected by him; one of these was for Mr. Stuart.

"Conley loaned Ardrey & Sumpter $10,000 that was not negotiated by Murphy & Bolanz, and the latter had nothing to do with the loan, except that Mr. Conley consulted them about the security offered. Murphy & Bolanz themselves borrowed $10,000 at 9½ per cent from Mr. Conley and Mr. Waugh, and Mr. Bolanz's word was taken by the lenders as to the title."

We further find that after the note was transferred to the Saddlery company said note was placed in the hands of McCormick & Spence, attorneys, for collection by said saddlery company, and that they were to receive the full amount of the attorneys' fees provided for in the note. Under the direction of said attorneys, said Murphy, trustee, advertised for sale the property covered by the deed of trust. After the advertising of said property, appellant Stuart filed his petition for injunction in the District Court of Dallas County against the Tenison Bros. Saddlery Company, seeking to restrain the sale of said property under said trust deed. In that case he alleged the execution of the note and that the same was usurious, setting forth the same facts as constituting usury as they herein claim. And further, that the note had been placed in the hands of McCormick & Spence for collection and they were demanding 10 per cent attorneys' fees, whereas the reasonable fee would only be $250, and offered to pay whatever might be due on the note after allowing credit for the payment of the usurious interest. The Saddlery company answered in that suit, and upon a hearing on the merits thereof the court rendered the following judgment: "This day came on to be heard the application of the plaintiff for an injunction herein, and the parties having announced ready, the matters in controversy were submitted to the court, who, after hearing the evidence and argument of counsel, is of the opinion that there is no equity in plaintiff's bill, and that the prayer therein for an injunction should be and the same is hereby refused, and thereupon the plaintiff asked that the cause be dismissed. It is therefore ordered that the plaintiff, Dan A. Stuart, take nothing by this suit, and that defendant, Tenison Bros. Saddlery Company, go hence without day and recover of plaintiff all costs herein incurred, for which execution may issue. The plaintiff in open court excepted to the ruling of the court and gave notice of appeal."

The injunction suit was defended by McCormick & Spence without further fee than that mentioned in the note. After the dissolution of the injunction the appellee paid the full amount of the note then due, principal, interest, and attorneys' fees.

We further conclude that in the negotiation of the loan Murphy &

Bolanz were not the agents of said Conley, but instead were the agents of the appellee Stuart. We also find that said Stuart did not pay exchange on any sum of money in the payment of said note.

*Conclusions of Law.*—The first contention of appellant is, that as the note bore the highest legal rate of interest and provided in addition thereto for exchange on New York on the principal as well as on the coupons attached, and being payable in the city of Dallas, said contract is usurious.

The stipulation for exchange in addition to the highest legal rate of interest does not necessarily constitute usury. If stipulated as a device to cover up a usurious transaction, of course it would not be upheld, but where stipulated to cover the expense of transporting the money from the place of payment to the residence of the creditor, we understand the rule to be that such a stipulation will not constitute usury. 27 Am. and Eng. Enc. of Law, 979; Webb on Usury, secs. 168, 169; Smith v. Champion, 29 S. E. Rep., 150; Parnell v. Barnes, 26 Wis., 473.

There is nothing in the evidence to show that the stipulation for exchange in this case was for the purpose of evading the usury law, but on the other hand it appears that the payee was a resident of the State of Missouri, and we think it fair to presume that he would want his money transmitted to the place of his residence, and if so, he would have the right to charge the usual rate of exchange for that purpose without affecting the transaction with usury. No exchange was in fact paid, nor was there any evidence that the rate of exchange to New York was above par. On the other hand, there was testimony that at times New York exchange was not above par.

Under the circumstances of this case the stipulation for exchange does not constitute usury.

The second contention of appellant is, that as Stuart was required to pay the commission to Murphy & Bolanz in negotiating the loan, in addition to the payment of the highest legal rate of interest, the transaction was thereby tainted with usury.

This contention is based upon the theory that Murphy & Bolanz were the agents of Conley in lending the money. Some respectable authorities do hold that where money is loaned through the agent of the lender, the highest legal rate of interest being exacted, and the borrower required to pay the commission to the agent, that such would constitute usury. But a different rule prevails where the party through whom the negotiation is made is not the agent of the lender. Murphy & Bolanz were not the agents of Conley in the transaction under consideration, but were the agents of Stuart, and the payment of Murphy & Bolanz's commission by Stuart did not make the transaction usurious. Williams v. Bryan, 68 Texas, 592; Carden v. Short, 31 S. W. Rep., 247. Nor do we think that the stipulations in regard to the payment of taxes, insurance, etc., violated the usury law.

Appellant further contends that he was entitled to recover the attor-

ney's fees paid by him, as same was paid under duress, and that under the conditions of the contract the appellee was not entitled to demand and receive in addition to the principal and interest 10 per cent attorney's fees. We do not concur in this contention. The note and deed of trust were executed simultaneously and constitute one contract. Construing them together in reference to attorney's fees, they show that the appellant agreed that in case there was a default in the payment of the amount due and the same was placed in the hands of attorneys for collection, he would pay the additional sum of 10 per cent as attorney's fees. There was default in the payment of the obligation, according to its stipulation, and it was placed in the hands of attorneys for collection. It was further shown that when so placed in the hands of said attorneys it was agreed between said attorneys and the holder of said note that said attorneys should receive said additional 10 per cent as fees for their services. Under these circumstances appellant was liable therefor, and he is not entitled to recover back any part thereof.

We are further of the opinion that the judgment in the injunction proceeding is a bar to a recovery by appellee. The issues involved in this proceeding were litigated in that proceeding and decided against the appellee. Having been so litigated and decided, appellee was not entitled to another day in court.

The judgment is therefore affirmed.

*Affirmed,*

Writ of error refused.