# TITLE GUARANTEE AND TRUST COMPANY, Use of Moses Hecht of J., et al.

## *vs.*

## JACOB WHEATFIELD et al.

*Mortgages: usurious; right of junior encumbrancers.   Usury: commissions to agent who procures loan.*

In the absence of an agreement on the part of a subsequent purchaser or encumbrancer to assume payment of a debt secured by a pre-existing lien, he may object to the payment of the debt in full, on the ground that it was usurious.        p. 459

The fact that the lenders of money are interested in an estate that held a small amount of the capital stock of the corporation that procured the loan, is too indirect to be considered in determining the question as to whether a charge of commissions by the corporation for procuring the loan was usurious.        p. 461

When a borrower employs an agent to procure a loan, he is justly obligated to pay for that agent's services; and such payment can not be held to render the loan usurious.        p. 463

*Decided June 24th, 1914.*

Appeal from the Circuit Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Enos S. Stockbridge* and *Myer Rosenbush* (with whom was *Benjamin Rosenheim* on the brief), for the appellant.

*Randolph Barton, Jr.,* and *Eugene O'Dunne,* for the appellees.

URNER, J., delivered the opinion of the Court.

The appellee is the holder of a third mortgage on certain real estate in Baltimore City, and the foreclosure of the second mortgage having produced a fund insufficient for the satisfaction of both claims, the exceptions before us were filed by the appellee in opposition to the payment in full of the preceding lien upon the ground that the loan it secured was usurious. A preliminary issue has been raised as to the right of the third mortgagee to dispute the amount of the second mortgage indebtedness. The principle, however, is settled in this State that, in the absence of an agreement on the part of a subsequent purchaser or encumbrancer to assume the payment of the debt secured by the pre-existing lien, he is at liberty to make such an objection as the one here interposed. *Carter* v. *Dennison,* 7 Gill, 157; *Gaither* v. *Clarke,* 67 Md. 28; *Andrews* v. *Poe,* 30 Md. 485; *Fulford* v. *Keerl,* 71 Md. 404; *Hough* v. *Horsey,* 36 Md. 181.

According to the proof the essential facts are as follows: In the early part of 1911 Jacob Wheatfield, the owner of the property in question, which was already subject to a mortgage for $45,000.00, applied through his attorney, Louis N. Frank, Esq., to the Title Guaranty & Trust Company, of Baltimore City, for a loan of $10,000.00 upon the same real estate. This application was refused by the company on the ground that it did not lend money on second mortgage. After a number of unavailing efforts had been made to obtain the money elsewhere, and after negotiations had been conducted without success for the sale of the property for $72,000.00 to the owners of adjacent premises, Mr. Wheatfield instructed his attorney to borrow $20,000.00 for him on second mortgage, and authorized him to pay commissions to anyone who

could procure the loan. In pursuance of this direction Mr. Frank submitted the proposition to a number of persons and finally applied again to the Title Guaranty & Trust Company, through Mr. John H. Duncan, its vice-president and secretary. Mr. Duncan said there was a possibility that he might be able to place the loan, and a few days later he notified Mr. Frank that the matter would be consummated. The money was obtained by the company from Moses Hecht of J. and Nathan I. Hecht, the persons to whom the property had been offered for sale, their checks for the full amount of the investment being delivered to the company prior to the execution of the mortgage. The company procured the loan from the Messrs. Hecht with the aid of Benjamin Rosenheim, Esq., who had been acting as their counsel. The real lenders did not come in contact with the borrower, and while their identity was suspected by his attorney, it was not actually disclosed. At their request the mortgage was taken in the name of the Title Guaranty & Trust Company. When Mr. Duncan reported to Mr. Frank that the loan could be placed, it was stated by the former that the commissions to be paid by Mr. Wheatfield for such a service ought to be $2,000.00, in view of the fact that the amount being obtained for him on second mortgage nearly equaled the value of the equity in the property. Upon objection by Mr. Wheatfield the commissions were reduced first to $1,500.00 and then to $1,250.00. This sum he agreed to pay and it was deducted by the company from the $20,000.00 fund received for his use upon the security of the second mortgage. In accordance with an understanding previously reached, the company paid $250.00 of the commissions to Mr. Frank and divided equally the remaining $1,000.00 with Mr. Rosenheim for his aid in procuring the loan and in consideration of his guaranteeing the company against loss on account of the mortgage being taken in its name. The investment was not treated as an asset of the company and did not appear on its records except in the form of a memorandum in reference

TITLE G. AND T. CO. vs. WHEATFIELD. 461

Md.]                    Opinion of the Court.

to the collection of the interest and its transmission to the persons entitled. An agreement in writing between the company and the Messrs. Hecht, made the day following the execution of the mortgage, declared the latter to be the actual owners of the investment. There is testimony to the effect that when the application for the loan was made to Moses Hecht he said that he would be willing to lend the amount asked for, provided the Trust Company and Mr. Rosenheim were compensated by Mr. Wheatfield for their trouble. It is in evidence also that Mr. Hecht suggested $2,000.00 as the proper amount to be paid for that purpose. The proof shows, however, that the lenders of the money received no part of the commissions nor anything in excess of the legal interest on the exact sum advanced. They were interested in an estate which held about one-eighth of the capital stock of the Trust Company, but the benefit they thus derived from the commissions paid the company was too indirect to be considered as a controlling factor in the determination of the question here presented. *Kaegy* v. *Trout,* 85 Va. 390; *West* v. *Equitable Mortgage Co.,* 112 Ga. 377.

Upon the theory that the Trust Company was acting as the agent of the lenders in conducting the negotiations for which the commissions were paid, the Court below held that the retention of the commissions by the company was usurious except as to the sum of $250.00 paid to the attorney of the borrower. As against the remaining $1,000.00 a credit of $62.50 was allowed on account of a charge to that amount which the evidence showed the company might have made for examination of the title, and the balance of $937.50 thus produced was directed to be deducted from the sum provided in the audit for the satisfaction of the second mortgage.

After a careful consideration of the facts we have stated, as to which there is no practical dispute, we are unable to agree with the conclusion of the learned judge, who ruled

upon the exceptions below, that the Title Guaranty & Trust Company was the agent of the lenders with respect to the transaction under inquiry. In our view of the case the services for which the commissions were paid, according to agreement, were rendered by the Trust Company exclusively at the instance of the borrower. There was no agency existing between the company and the eventual mortgagees when the application for the loan was made, and the company's acceptance of the employment thus proffered was the sole originating cause of its action in opening negotiations with the lenders. The case is not one in which a borrower has been required to pay for services rendered the lender by an agent employed by him to procure a suitable investment, and there is no occasion to discuss on this appeal the scope and effect of the law against usury as applicable to such conditions. The present record shows conclusively that the Trust Company accepted no agency and rendered no services for the lenders until the negotiations for the loan had been consummated, when the company consented to take the mortgage in its own name at the request of the persons furnishing the money. In view of the fact that the compensation received by the Trust Company was paid by the mortgagor for services actually rendered at his request and for his benefit in procuring the loan he desired, the statement of one of the lenders that the investment would be made provided the borrower paid the company and Mr. Rosenheim for their trouble can have no effect upon the rights of the parties. The "trouble" to which this remark appears to have referred was that which had been incurred at the instance of the prospective mortgagor in placing the loan, and the commissions in which the intermediaries shared were those which were charged and paid in pursuance of the borrower's own proposal. While Mr. Rosenheim had served in the capacity of counsel for the Messrs. Hecht, the record does not suggest that he was their agent for making investments. He was engaged as the assistant of the Trust Company in the

effort to obtain the loan for which the borrower had made application. The suggestion offered by Mr. Hecht as to the amount of the commissions was not accepted by Mr. Wheatfield, and there is no evidence in the record to show that his voluntary agreement to pay $1,250.00 for the procurement of a mortgage loan of $20,000.00 on a property valued at $72,000.00, already subject to a $45,000.00 lien, involved an oppressive exaction by the agency employed in the negotiations.

It is a reasonable and well settled rule, as expressed in 39 *Cyc.* 978, that: "When the borrower employs an agent to procure a loan, he is justly obligated to pay for that agent's services, and such payments can in no case render a loan usurious." The text of 29 *Am. & Eng. Enc. Law* (2nd ed.), 501, is to the same general effect. This principle has been uniformly applied in numerous cases, including: *Goodwin* v. *Bishop,* 145 Ill. 421; *Thomas* v. *Miller,* 39 Minn. 339; *Baldwin* v. *Doying,* 114 N. Y. 452; *George* v. *New Eng. Mortgage Security Co.,* 109 Ala. 548; *Pitts* v. *Maier,* 115 Ga. 281; *Polk County Savings Bank* v. *Harding,* 113 Ia. 511; *Graham* v. *Fitts,* 53 Fla. 1046; *Cornwell* v. *McCoy,* 6 Idaho, 219; *Stuart* v. *Tenison Bros. Saddlery Co.,* 21 Tex. Civ. Appls. 530; *Smith* v. *Mack* (Ark.), 151 S. W. 431; *Pass* v. *N. E. Mortgage Security Co.,* 66 Miss. 366; *Davis* v. *Sloman,* 27 Neb. 877; *Secor* v. *Patterson,* 114 Mich. 37; *Grant* v. *Insurance Co.,* 121 U. S. 105.

The cases upon which the appellee relies were concerned in each instance with payments by the borrower, in excess of legal interest, for services rendered by one who was shown or conceded to have sustained the relation and performed the duties of an agent for the *lender.* It is evident that decisions dealing with such a state of facts admit of very different considerations from those which are appropriate to cases like the present where the agency receiving the compensation acted by virtue of an employment by the *borrower* in procuring the loan.

The theory was advanced in argument that inasmuch as the Trust Company assumed to act as the nominal mortgagee and did not disclose the source from which the money for the loan was obtained, it should be treated as the real lender for the purposes of the issue now before us and should accordingly be held amenable to the charge of usury as to the commissions it received on account of the investment. In *Call* v. *Palmer,* 116 U. S. 102, where a bonus exacted by an agent of the lender, without the knowledge of the latter, was held not to make the loan usurious, it was said to be an immaterial circumstance that the agent professed to be acting for himself and did not disclose his agency in his negotiations with the borrower. The facts of the case at bar, however, as already shown, make it apparent that the borrower could have had no doubt that the Trust Company, while acting as the nominal mortgagee, had really procured the loan from a third party. It had declined to make a smaller loan on the same security for its own account upon the distinct ground that it would not invest in a second mortgage. When it undertook to "place" a loan for double the amount originally proposed, the borrower had every reason to understand that the money was being obtained from another source. This was a service for which compensation could be legitimately paid by the person in whose behalf it was rendered, and the performance of the agreement to make such a payment is not in our judgment a sufficient reason for declaring the transaction to be in violation of the statute against usury and for requiring the lenders, who have never received anything beyond the legal interest on the loan, to lose a part of the sum they actually invested.

*Order reversed, with costs and cause remanded.*