### ROUSE v. MLINAR.
### No. 2434.

Court of Civil Appeals of Texas. Beaumont.
Oct. 20, 1933.

Rehearing Denied Oct. 25, 1933.

Vinson, Elkins, Sweeton & Weems, of Houston, for plaintiff in error.

C. H. Chernosky and A. B. Gerland, both of Houston, for defendant in error.

WALKER, Chief Justice.

The appeal is by writ of error, but the parties will be referred to as appellant and appellee.

On the 25th day of May, 1931, appellant, C. H. Rouse, sold to appellee, William Mlinar, for $3,000, twenty acres of land, the south half of the southwest forty of the F. M. Noble survey, section 12, Montgomery county. In payment for the land appellee paid appellant at the time the deed was delivered to him $1,500 in cash, and executed and delivered to appellant his two promissory notes, each for $750, note No. 1 due six months after date, and note No. 2 twelve months after date, each note stipulating for interest from date at the rate of 7 per cent. per annum and the usual 10 per cent. attorney's fees, and providing further that the failure to pay the first note at maturity would, at the option of the holder, mature note No. 2. The notes and deed from appellant to appellee retained a vendor's lien to secure the payment of the notes. Appellee failed to pay the notes at maturity, whereupon appellant instituted this suit against him, declaring upon both notes, and praying judgment for the amount due thereon, principal, interest, and attorney's fees, and for foreclosure of the vendor's lien. Appellee answered appellant's petition by pleading that one Miller was appellant's agent in making the sale of the land and that appellant and Miller, conspiring together, fraudulently induced him to buy the land by representing to him that it was worth $150 per acre, when, in fact, it was worth much less, and that he relied upon these false and fraudulent representations, believing them to be true, and on such representations bought the land at the price of $150 per acre and paid thereon $1,500 in cash and executed the notes sued upon. His petition and prayer was: First, for rescission and recovery of the money paid and for cancellation of the notes sued upon; second, if not entitled to rescission, but only in that event, he pleaded and prayed for both actual and exemplary damages. Upon trial to a jury the verdict was that Miller induced appellee to purchase the land by means of false and fraudulent promises and representations; that in selling the land to appellee Miller was appellant's agent and was authorized by appellant to sell the land and to make the false representations upon which the land was sold; that appellant entered into a conspiracy with Miller to induce appellee to purchase the land by means of false representations and fraudulent promises; that appellant, with full knowledge of the fraud practiced upon appellee by Miller, acquiesced in, ratified, and approved the same; that the reasonable market value of the land at the time appellee purchased it was only $20 per acre; and that appellee should recover $3,500 exemplary damages from appellant. Judgment was entered on the verdict, to the effect that appellee had abandoned his count for rescission, and that the title to the twenty acres of land be vested in appellee and that the two ven-

dor's lien notes be canceled, and that appellee recover of and from appellant $1,100 actual damages and $3,500 exemplary damages.

We sustain appellant's proposition that the finding of the jury to the effect that Miller was his agent in selling the land to appellee and in making to him the false and fraudulent and willful representations upon which the land was sold is without reasonable support in the evidence. Appellee was about thirty-five years old, a college graduate, a business man for about fourteen years, and on the day he purchased the land owned and was operating a drug store in the city of Houston. Miller came into his store on that day, an absolute stranger, and introduced himself as Miller, and, having introduced himself as Miller, began talking with appellee about his business. His story was that he was a sort of colonization agent and had listed with him fourteen or fifteen prospective customers who wanted to engage in truck farming. He showed appellee a map upon which was delineated and marked out appellant's land, and represented to appellee that this land was fine for truck growing, that it could be bought for $150 per acre, and that it was reasonably worth that sum, and that he could sell it immediately to his customers or clients at a profit of at least $25 per acre; that he could not advance the money himself, as all his money was invested in other enterprises. He suggested that he and appellee go to see appellant with the purpose of buying this land. At his request they immediately called upon appellant and were received by appellant in his home, where Miller introduced himself to appellant as Kunson, though he had previously introduced himself to appellee as Miller. After an extended discussion pro and con as to the value of the land, in which Miller made appellant the same representations he had made to appellee, to the effect that he was a colonization agent, etc., and after Miller had explained to appellant that he and appellee wanted to buy the land for truck farming purposes, they agreed upon a price of $150 per acre. At first appellant wanted $250 an acre for his land. During the negotiations the oil possibilities of this land were discussed, as the land was situated within three or four miles of the Conroe oil field, one of the great oil fields of Texas. Appellant testified that he offered to take $20 an acre if they would let him retain the oil. Appellee denied that appellant made this offer, but did concede that oil was discussed. The testimony was that for many years this particular survey of land had been recognized as having oil value. Appellant had sold many acres of it at prices ranging from $100 to $150 per acre; the last sale for oil prospects, however, was made five or six years before the sale to appellee and before the Conroe oil field was developed. A short

while before the sale to appellee, appellant sold a large tract of this survey to another party at $20 per acre, retaining, however, a royalty interest of one-eighth in the oil. Since the time appellant sold a part of his land for oil purposes, at the prices stated above, the Conroe oil field was developed. Appellant denied that he ever saw Miller prior to the time that he and appellee came to his house to discuss the purchase of his land. He said he paid Miller nothing for making the sale and testified positively to the effect that no relation whatever ever existed between him and Miller at any time, and that he had had no business dealings whatever with him, except upon this particular occasion. He said that he never saw Miller after the sale was made except one time about a month later when he saw him on the streets of Houston, but did not get to speak to him, and there was no evidence to the contrary except the testimony of appellee referred to below. The testimony was further to the effect that the particular map of appellant's land shown appellee was an oil map to that section of Montgomery county, of which hundreds of copies had been made and which was available to any person who wanted it and was not under the control of appellant. Appellee testified that after the negotiation had been concluded he thought he saw appellant wink at Miller and that appellant and Miller seemed to be friendly: that after the deal was closed he heard appellant say to Miller, or Miller to appellant, something about 1200 Prairie street: that after a friendly conversation in which all parties participated, he and Miller drove away together in his car and that Miller asked him to stop at a drug store so that he could buy some cigarettes and that Miller did not return; after waiting awhile, he became uneasy and drove to Prairie street and saw Miller and appellant walking together on the street, laughing and talking. Appellant denied that he "winked" or was particularly friendly with Miller or promised to meet or did meet him on Prairie street. There was testimony to the effect that this man Miller or Kunson had dealt with other parties under a different name. Appellee testified that he never saw Miller again. And there was no testimony to the effect that his identity was known or that any one knew where he was after the sale of this land. There was no testimony except the facts of this case tending to impeach in any way, to any extent whatever, the reputation of appellant for honesty and fair dealing.

All the evidence in this case, as we understand it, is to the effect that appellant had great confidence in his land as oil land; that he had sold parts of it for oil development at the same price charged appellee. The only incriminating circumstances relied upon by appellee to sustain the verdict of the jury are: (a) The wink given by appellant to Miller,

(b) the friendly relation that seemed·to exist between appellant and Miller after the trade was made, (c) the reference to 1200 Prairie street and the fact that he saw them on the street after the sale was made, and (d) the map or plat of appellant's land exhibited to appellee by Miller. As the map was one in general circulation, it is entitled to but little weight as an incriminating circumstance. We have carefully read the entire. statement of facts in this case. Upon the whole record we are of the opinion that the probative force of the testimony does not go beyond the point of creating a mere surmise or suspicion that Miller was the agent of appellant. Under the principles discussed by our Supreme Court in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, 1063, "a mere surmise or suspicion". is not sufficient to support a verdict. See, also, Wills v. Central Ice & Cold Storage Co., 39 Tex. Civ. App. 483, 88 S. W. 265; Waco Drug Co. v. Hensley (Tex. Com. App.) 34 S. W.(2d) 832; Blackwell v. Ship Channel Development Co. (Tex. Civ. App.) 204 S. W. 223.

It follows that the judgment of the lower court should be reversed and remanded for a new trial, and it is accordingly so ordered.

Reversed and remanded.