**NEVELS et al. v. HARRIS et al.**

No. 8266.

Court of Civil Appeals of Texas. Austin.

June 17, 1936.

Rehearing Denied July 15, 1936.

1316

C. H. Cain, of Tahoka, and Lockhart & Brown, of Lubbock, for plaintiffs in error.

Edwin H. Yeiser and Coleman Gay, both of Austin, for defendants in error.

BLAIR, Justice.

The parties will be designated as appellants and appellee.

Appellee, H. H. Harris, sued appellants, J. H. Newsom and wife, Audrey Newsom, W. B. Slaton, F. E. Redwine, and W. D. Nevels, on their promissory note for $6,400, payable to Otto Stolley, who assigned it to appellee, and to foreclose a deed of trust lien securing the note executed by Newsom and wife, on a section of land situated in Lynn and Dawson counties; and a trial to the court without a jury resulted in judgment for appellee as prayed; hence this appeal.

The defense to the note was usury, appellants alleging that in addition to the 8 per cent. interest provided for in the note, Otto Stolley retained the sum of $544, and advanced only $5,856 on the $6,400 note; and the question here presented is whether the evidence sufficiently supports the finding and conclusion of the trial court that although the note was payable to Stolley, he in fact was merely the agent of the Newsoms in procuring the loan from appellee, and for which services they were to pay the $544 as brokerage and other fees, in accordance with the agreement between Stolley and the Newsoms and the other signers of the note. The following evidence fully supports the judgment of the trial court:

Prior to his death in an automobile accident before the trial of this case, Otto Stolley had been engaged in the loan or loan brokerage business in Austin, Tex., for some twenty years. His secretary for ten years next preceding his death, including all dates material to this case, testified that she never knew of Stolley's making a loan for his own account, but that he always acted as a loan broker. On November 27, 1926, Newsom and wife made application to Stolley, as follows:

"We hereby apply to you to make us, or secure for us, a loan of $6,400.00 to be repaid five years after date with interest thereon from date at the rate of eight per cent per annum, payable annually * * * and to be secured by note and deed of trust, of even date herewith. * * *

"18. We hereby promise to pay you for making or securing said loan for us, five per cent on the amount of the same as your fees, two and one-half per cent of the same for your inspector, and one per cent on the amount of the same for attorney's fees, conditioned that the attorney's fees are not to be under $15.00."

This application was obtained by G. E. Lockhart who was "inspector" for Otto Stolley in his loan business, and had procured "hundreds" of such applications during their business relations covering some twenty years. He transmitted the application to Stolley with the statement that as inspector he approved the application upon condition that appellants W. B. Slaton, F. E. Redwine, and W. D. Nevels join in the execution of the note; which was done. These three appellants held notes secured by liens on the land involved. The application was indorsed: "Application of J. H. Newson. Approved for $6,400.00. Land Mortgage Business of Otto Stolley."

Stolley caused the note and deed of trust to be prepared. They were dated November 27, 1926, the note being due in five years, and attached to it were five interest coupons for $512 each, due on November 27, 1927, 1928, 1929, 1930, and 1931, respectively. These papers and releases of liens securing indebtedness outstanding against the land were sent for execution, and, after same were executed, appellant W. B. Slaton, as cashier of the First National Bank of Tahoka, forwarded same to the American National Bank of Austin, Tex., accompanied by a letter, dated Jan-

uary 11, 1927, with instruction to notify Stolley and permit him to examine papers and to deliver them upon payment of $6,400, "less $320 to Stolley, $160 for Lockhart, and $64 attorney's fees."

On January 26, 1926, Stolley secured appellee to take up the loan. Appellee transferred two notes to Stolley, which Stolley had theretofore transferred to him, and paid the difference to him by check, the total including interest on the note from November 27, 1926, to date of assignment, being $6,485. Stolley then issued his check to the American National Bank for $5,856, dated January 27, 1927, together with his letter of instructions, as follows:

"We hand you herewith check for $5,856, which is the proceeds in the J. H. Newsom loan of $6,400.00, as per the following statement:

| "Loan | | $6,400.00 |
|---|---|---|
| "Less: | | |
| "Commission, Otto Stolley | $ 320.00 | |
| "Commission, G. E. Lockhart | 160.00 | |
| "Attorney's fees | 64.00 | |
| "Check for balance | 5,856.00 | |
| | "$6,400.00 | $6,400.00 |

"Please credit the First National Bank of Tahoka, Texas, with $5,856.00 and wire them collect advising them that the proceeds in this loan has been placed to their credit and the amount, as requested by them in their letter to you dated Jan. 11, 1927."

The papers were then delivered by the bank to appellee Harris. He testified, in answer to the question as to whether he bought the note from Stolley, as follows: "Well, I don't know whether you can say I bought the note or whether I put up the money to obtain the note."

Stolley, by assignment without recourse, dated November 27, 1926, but acknowledged January 27, 1927, transferred the note and deed of trust to appellee. Stolley's secretary, who handled the transaction, testified that Stolley did not make the loan out of his personal funds, but out of the proceeds of the sale of the two notes which he received from appellee, together with the amount received on appellee's check. It was not shown what became of the $85 paid by appellee to Stolley as interest which had accrued on the note from November 27, 1926, to January 27, 1927. The undisputed evidence showed that appellee never received any part of the brokerage fees paid to Stolley, but that the $544 was actually paid as directed by the Tahoka bank. After the loan had matured, appellant Newsom wrote Stolley a letter stating, "I hereby reappoint you as broker for me, to negotiate for and in my behalf with the holders of my note * * * with the view of getting said note renewed at eight per cent interest rate." Stolley performed this service and was paid a fee for it.

The above facts sufficiently support the finding and conclusion of the trial court that Stolley did not make the loan, but procured appellee to make it, and that the $544 was paid Stolley as brokerage and other fees in accordance with his agreement to "secure * * * a loan for $6,400."

Appellants neither alleged nor attempted to prove that Stolley was the general agent of appellee Harris in securing him to take up the loan in suit. The case, in so far as the controlling issue of fact is involved, presented the single question of whether Stolley was the actual lender or merely the broker employed by appellants to procure a loan for them, in consideration of the fees stipulated. Appellants' contention that he was the lender seems to be predicated upon two grounds: (1) Because the loan papers were drawn in his favor; and (2) because he actually advanced the money and collected a part of the interest due on the loan contract. The rule is settled that the mere fact that the loan papers are drawn in the name of the loan broker does not preclude him from showing the real lender of the money; and that brokerage fees paid him are not intended and do not render the loan usurious where a third party was the actual lender of the money. Title Guarantee & Trust Co. v. Wheatfield, 123 Md. 458, 91 A. 757; Stuart v. Tenison Brothers Saddlery Co., 21 Tex.Civ.App. 530, 53 S.W. 83 (writ ref.); Sales v. Mercantile Nat. Bank (Tex. Civ.App.) 89 S.W.(2d) 247; Noel v. Panhandle Bldg. & Loan Ass'n (Tex.Civ.App.) 85 S.W.(2d) 773 (writ ref.). And these and many other cases hold that where an agent has only special and limited authority, his charging the borrower a fee as a commission for making the loan, for examining the title of the property given as security, etc., is not the act of the principal, and the fee so charged does not render the loan usurious. Chandler v. Guaranty Mortgage Co. (Tex.Civ.App.) 89 S.W. (2d) 250.

In the case of Mallory v. Columbia Mortgage & Trust Co., 150 Tenn. 219, 263

S.W. 68, 70, where the loan papers were made in favor of the broker, it was held, as follows:

"In determining whether or not a given transaction is tainted with usury it is generally held that the court will disregard the form and look to the substance. Good faith is the decisive factor when compensation is exacted and received by an intermediary in addition to the legal rate. Applying this principle, the authorities hold that—

"'The payment of a commission to the borrower's agent or broker will not render the loan usurious, even though the security for the loan is, for purposes of convenience, taken in the name of the agent, where there is no intention that the agent shall himself make the loan.' * * *

"In the case at bar we think it satisfactorily appears that the taking of the note to the defendant as payee was for convenience in negotiation only, and that the advance made temporarily to the borrower was for his convenience; and that neither of these circumstances prove a design to evade the usury laws, but are consistent with the theory of the defendant that it was acting as a broker or agent only, and was therefore legitimately entitled to collect a commission charge."

Nor does the fact that Stolley did not know who the lender would be at the time the papers were drawn appear to be material. In the case of Webb v. Southern Trust Co., 227 Ky. 79, 11 S.W.(2d) 988, 989, it was held, as follows:

"The question therefore to be determined is: Did the trust company lend the money? The facts are undisputed. The trust company was not in the business of lending money. Its business was that of procuring loans on farm mortgages. It simply acted as a go-between and in fact was the correspondent of a number of corporations lending money, one of which was the Metropolitan Life Insurance Company, with which it had a written contract to act for it. By this contract the life insurance company reserved the right not to take a loan unless satisfactory to it. The mortgages were made July 16th. The money was sent to Webb a few weeks later, and the mortgage was assigned to the Metropolitan Life Insurance Company August 14th. The trust company did not know positively that the Metropolitan would take the loan until the Metropolitan approved it. but it made the loan and advanced the money, expecting the Metropolitan to approve the contract, and, if the Metropolitan had declined to do this, it would then have placed the loan with one of its other correspondents. But it is clear from all the proof that it had no intention of lending the money itself. It only advances it temporarily to get the transaction closed. None of the interest was in fact paid to it. The notes and interest were payable at its office, and it was the agent of the Metropolitan to collect the money for it, and, though it received the money, it was in fact received as the agent of the Metropolitan. The transfer to the Metropolitan was of record just as the mortgage was of record. The written contract which Webb made simply employed the trust company as his agent to secure the loan for him, and for its services he agreed to pay it 5 per cent. Under all the facts the court cannot say that this was a mere device to evade the usury laws. On such questions the court gives considerable weight to the finding of the chancellor. Plainly it cannot be said that the finding of the chancellor is against the weight of the evidence. It has been often decided that a contract to pay brokerage fees for securing a loan is not usurious."

It is true that Stolley collected the interest from appellee which had accrued on the note from its date until appellee paid the bank and received the papers, but it was not shown what became of this interest and certainly appellants could recover the same from Stolley.

Another detail of significance is the fact that the note in suit was never delivered to Stolley except for examination. Stolley issued the check to pay for the note after appellee had furnished the money with which to pay for the note, and the note and papers were delivered by the Austin bank to appellee. This evidence and the testimony of his secretary that Stolley never lent his own money, but procured others to lend their money on applications received by him, sufficiently support the finding and conclusion of the trial court that he acted as the agent or broker of appellants, and that the $544 was paid to him as brokerage and other fees, in accordance with his written agreement with appellants to "secure a loan of $6,400" for them.

The judgment of the trial court will be affirmed.

Affirmed.