## NATIONAL LIFE INS. CO. v. SCHROEDER et ux.

### No. 2044.

Court of Civil Appeals of Texas. Waco.

Dec. 8, 1938.

Rehearing Denied Jan. 5, 1939.

———◆———

Read, Lowrance & Bates, of Dallas, and Bryan & Maxwell, of Waco, for appellant.

Tirey & Tirey and Geo. W. Barcus, all of Waco, for appellees.

GEORGE, Justice.

This is a suit by Theodore Schroeder and wife, Elizabeth Schroeder, against National Life Insurance Company founded on an allegation of usury. It was tried before the court and jury and judgment was rendered on the jury's answers to special issues decreeing application of all interest paid to the principal. Hence this appeal by National Life Insurance Company.

Appellant contends that no usury was proven and for such reason the trial court erred in denying its request for a peremptory instruction to the jury for a verdict in its favor on its cross action against Theodore Schroeder for the full amount of principal, interest and attorney's fees due upon its note and for foreclosure of its lien against Theodore Schroeder and Elizabeth Schroeder. This assignment is sustained.

Theodore Schroeder, on January 17, 1923, in writing and under oath, appointed The Deming Investment Company of Oswego, Kansas, his agent to procure for him three loans aggregating $16,000 on three separate tracts of land situated in the West community in McLennan county, and therein made application for such loans and authorized it to receive for him from the lender the avails of the loan and to receive and trans-

mit for him annually his funds for the payment of interest as it became due and payable, and on the same day signed, acknowledged and delivered three loan contracts to The Deming Investment Company in which he agreed to pay The Deming Investment Company as compensation for services rendered in negotiating said loans for him and the expense to be incurred by it in having the lands inspected, plat and inspector's report prepared, title examined, papers prepared in connection with loans, etc., the aggregate sum of $750 in cash, and agreed to execute all papers in the name of The Deming Investment Company in order to expedite the closing of the loans, and authorized it as broker to advance its funds for his accommodation, but expressly recognized that it was under no obligation to do so until it had received the proceeds of the loans from the investor. These instruments were submitted to The Deming Investment Company's State Manager at Dallas for checking and recommendation and were then forwarded to the home office in Oswego, Kansas. The three applications for loans were, on January 25, 1923, forwarded to National Life Insurance Company, Montpelier, Vermont, for examination and acceptance or rejection. The National Life Insurance Company declined to take the three loans but retained the applications and informed The Deming Investment Company it would purchase one loan of $15,000 on the entire security. The matter was then taken up with Schroeder and he agreed to accept one loan of $15,000. Thereafter, on February 21, 1923, Theodore Schroeder and Elizabeth Schroeder executed and delivered to The Deming Investment Company one note in the sum of $15,000, bearing interest from March 1, 1923 until maturity at the rate of 5½ per cent per annum and from maturity until paid at the rate of ten per cent per annum, stipulating for attorney's fees in a sum equal to ten per cent of the principal and interest then remaining unpaid, and providing that if any of the ten interest coupon notes should remain unpaid for thirty days after its maturity, the note and all interest thereon accrued should, at the election of the holder, become due and payable, and they, at the same time, signed, acknowledged and delivered a first deed of trust on the land involved in this cause to secure payment of such note. They likewise on the same day executed and delivered a note in the sum of $798.75, payable to The Deming Investment Company, due on February 1, 1924, bearing interest from

maturity until paid at the rate of ten per cent per annum, and their second deed of trust on said land, which note and deed of trust recited that the note in the sum of $798.75 was being executed and delivered to The Deming Investment Company as earned agreed commission for the negotiation of the $15,000 loan. The Deming Investment Company, on March 3, 1923, advised National Life Insurance Company that it was closing the one loan of $15,000 to Schroeder and shortly thereafter delivered its check to Schroeder in the sum of $15,000; and on the 12th day of May 1923 executed written assignment of the $15,000 note and lien to National Life Insurance Company.

Theodore Schroeder testified that when they were fixing up the application and loan contracts they did not tell him that the $798.75 was the commission he was paying The Deming Investment Company; that he made application for loans aggregating $16,000; that it is his best recollection that they later came back and told him they could only give $15,000; that The Deming Investment Company's check for $15,000 was delivered to him; that he made all payments to The Deming Investment Company; that the first nine interest coupon notes maturing annually were marked "Paid National Life Insurance Company," "Paid Deming Investment Company," and that same have been in his possession since they were mailed one each year to him; that he has not paid any part of the $15,000 note or the last interest coupon note in the sum of $825 maturing on February 1, 1933; that at the time he executed the deeds of trust and notes he knew he was executing two deeds of trust and two notes; that he noticed one was on a regular deed of trust form on white paper and consisted of four pages, and that the other was on a single sheet of blue paper; that he did not pay the inspection fee, the commission of Marek and Cervenka, the fee for having title examined, etc.; that he signed and swore to three applications for loans before Robert Cervenka; that he signed and acknowledged the three loan contracts before Robert Cervenka; that he did not agree to pay anybody a commission out of the money that he got; that he could not recall whether, after the loan was reduced to $15,000, they agreed to take his note for twelve months at six per cent for $750 commission; that it could be true that they agreed to take his note for $750 and carry it until the next February at six per cent per annum, which would make $798.75; that nothing was said about commission and that he did not sign anything about commission. Rudolph Marek, witness for appellees, testified that he sent Mr. Sorrell of The Deming Investment Company to Mr. Schroeder, and that later Messrs. Robert Cervenka, Sorrell and Schroeder returned to the office of Marek & Cervenka, in West, and there finished preparing the papers; that he was sure the matter was discussed in the office; that if anyone paid his firm a commission, it was The Deming Investment Company; that he does not recall having heard anything said to Schroeder about paying to The Deming Investment Company a commission of $798.75, and that he did not know anything about that; that the signature on the three applications and the deeds of trust and notes is Schroeder's; that the first deed of trust and note for $15,000 is on white paper and the other is on blue; that he is sure The Deming Investment Company had a man to come down and inspect the land; that he thinks The Deming Investment Company paid the inspection and title examination fees. Robert Cervenka, witness for appellant, testified that The Deming Investment Company paid the firm of Marek & Cervenka the sum of $150 net as compensation in connection with the loan to Schroeder; that Schroeder swore to three loan applications on white paper before him on January 17, 1923, and signed and acknowledged loan contracts on blue paper on same date; that he explained to Schroeder at the time the reason for the two sets of papers—one set for loans and interest and the other for broker's commissions; that he explained to Schroeder the loan contract before he acknowledged it; that the commission was discussed. M. P. Crum, witness for appellant, testified that he was Texas manager in 1923 for The Deming Investment Company, but that he was not then connected with the company; that The Deming Investment Company was a broker in farm mortgages and that it did not make any loans or permanent investments for itself; that it made its money out of brokerage fees; that the applications and loan contracts were submitted to him in the Dallas office and that he checked and recommended them to the home office in Oswego; that he relied upon the statements in the loan contracts; that Mr. Sorrell made two trips with reference to the loan and inspection of the property, etc.; that The Deming Investment Company paid the firm of Reed, Lowrance & Bates, attorneys, $25 for examining the title; that the title

policy required by National Life Insurance Company in connection with the loan cost The Deming Investment Company $31; that the salary and expenses of Mr. Sorrell in going down to the property was approximately $50; that his automobile expense would be approximately $15; that Mr. Sorrell made the second trip down there after the National Life Insurance Company had approved one loan of $15,000 to make arrangements with Mr. Schroeder for one loan instead of three. Clarence E. Moulton, witness for appellant, testified by deposition that he had been treasurer of National Life Insurance Company since November 19, 1929; that he had access to the books, records and accounts of the company; that The Deming Investment Company submitted on January 25, 1923 the three loan applications of January 17, 1923 to the National Life Insurance Company and it declined to purchase the three loans aggregating $16,000 but offered to take one loan of $15,000 on the entire security; that on March 3, 1923 The Deming Investment Company advised the National Life Insurance Company it was closing the loan to Schroeder of $15,000 and on May 17, 1923 the completed papers were submitted to the National Life Insurance Company for approval; that the papers were approved by the title examiner of the National Life Insurance Company on June 5, 1923 and remittance was forwarded on the following day; that National Life Insurance Company received final papers on July 2, 1923; that the interest maturing February 1, 1924 to February 1, 1932, inclusive, was paid to National Life Insurance Company.

Thus, there is presented for determination the question whether there is any substantial evidence of probative force in the record that would lead to the belief that The Deming Investment Company made the loan for itself and that it inserted in the various instruments the clause herein mentioned "that The Deming Investment Company was acting as the agent of the Schroeders" as a scheme to enable it to collect interest thereon at a greater rate than ten per cent per annum. The applications, the loan contracts, the deeds of trust and the notes evidence on their face a legal transaction. National Life Ins. Co. v. Schroeder, Tex.Civ.App., 94 S.W.2d 868; Hughes v. Security Building & Loan Ass'n, Tex.Civ. App., 62 S.W.2d 219; Williams v. Bryan, 68 Tex. 593, 5 S.W. 401; Sales v. Mercantile National Bank, Tex.Civ.App., 89 S.W. 2d 247; Stuart v. Tenison Bros. Saddlery Co., 21 Tex.Civ.App. 530, 53 S.W. 83; Ballard v. Shock, Tex.Civ.App., 91 S.W.2d 385; Chandler v. Guaranty Mortgage Co., Tex. Civ.App., 89 S.W.2d 250; Bankers' Life Co. v. Miller, Tex.Civ.App., 68 S.W.2d 574; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935; Mallory v. Columbia Mortgage & Trust Co., 150 Tenn. 219, 263 S.W. 68; Indemnity Ins. Co. v. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553; Call v. Palmer, 116 U.S. 98, 6 S.Ct. 301, 29 L.Ed. 559; Wood v. Continental Savings & Bldg. Ass'n, Tex.Com.App., 56 S.W.2d 641; Hatcher v. Continental Southland Savings & Loan Ass'n, 124 Tex. 601, 80 S.W.2d 299.

■ The burden rested on Theodore and Elizabeth Schroeder to prove these propositions. Shipman v. Wright, Tex.Civ.App., 3 S.W.2d 519; Marsh v. Tiller, Tex.Civ. App., 293 S.W. 223; Lattimore v. National Bond & Mortgage Corp., Tex.Civ.App., 114 S.W.2d 602, par. 5; Rushing v. Citizens' Nat. Bank of Plainview, Tex.Civ.App., 162 S.W. 460.

■ Every word and act of all the interested parties at the time are contradictory of and inconsistent with the suggestion that The Deming Investment Company made the loan for itself and proposed to collect the $798.75 as interest instead of an earned commission for floating the loan, and all of the testimony, attendant facts and circumstances repel the inference that The Deming Investment Company, as a substitute for avoiding the effect of the usury law, stipulated that the $798.75 note represented a commission for making the loan. The intent of The Deming Investment Company throughout the transaction is made certain by an examination of its words, conduct and acts. The first thing The Deming Investment Company did after receiving applications for loans and accepting loan contracts was to find a ready, able and willing purchaser or maker of the loan in an amount and on terms satisfactory to Theodore and Elizabeth Schroeder; and the second was to prepare the notes and deeds of trust in strict compliance with the contract as modified; and third to thereafter punctually perform the obligations and services imposed upon it as broker. It represented at all times to Schroeder and National Life Insurance Company that it was acting merely as agent in financing the loan and National Life Insurance Company fulfilled in all particulars its original commitment. The Deming Investment Company in the loan contracts of January 17, 1923

and the subsequent modification thereof obligated itself as agent of Theodore Schroeder to find an investor who would take the $15,000 note and offered security, and Schroeder bound himself to execute such papers and furnish such evidences of title as were necessary to assist it in the floating of the loan. The documentary evidence, the letters, the deeds of trust, the notes, the applications and the loan contracts corroborate and supplement the uncontroverted testimony of the witness, Crum, that The Deming Investment Company did not loan its funds but only acted as broker. The record reveals that Schroeder was in 1923 a man of considerable means and extensive business experience and that he was at the time of the trial an intelligent witness who fully understood the import of all questions asked and the effect of all answers given, yet he did not relate any facts or circumstances that would indicate that he did not read and understand all of the instruments executed by him in connection with the loan, or that he did not voluntarily execute them, or that the instruments did not express the agreement finally reached, or that The Deming Investment Company did not act in good faith as a broker. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Leonard v. Smith, Tex.Civ.App., 99 S.W.2d 328; Waco Drug Co. v. Hensley, Tex.Com.App., 34 S.W.2d 832; Rouse v. Mlinar, Tex.Civ.App., 63 S.W.2d 1093; Federal Life Ins. Co. v. Raley, 130 Tex. 408, 109 S.W.2d 972; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447; Sov. Camp, W. O. W. v. Patton, 117 Tex. 1, 295 S.W. 913; Pioneer Bldg. & Loan Ass'n v. Johnston, Tex.Civ.App., 117 S.W.2d 556; Poe v. Poe, Tex.Civ.App., 118 S.W.2d 831.

It appears that the $798.75 note and second deed of trust were executed in conformity with and for the purpose of carrying out the loan contracts and agreements, consequently all of them must be treated as constituting one contract. That contract expressly authorized The Deming Investment Company to incur the expenses paid by it in at least the sum of $206 in connection with negotiating the loan, and under the authority of Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 109 A.L.R. 1464, Id., Tex.Civ.App., 95 S.W.2d 1315, Matthews v. Tibbitt, Tex.Civ.App., 120 S.W.2d 503, and Hughes v. Security Bldg. & Loan Ass'n, Tex.Civ.App., 62 S.W.2d 219, should not in any event be considered as interest under our usury laws. Wherefore, if it be assumed that The Deming Investment Company made the loan for itself, it does not follow that Mr. and Mrs. Schroeder paid or could have been required to pay under any phase of the case, for the use and detention of the $15,000, in excess of ten per centum per annum. They, on or about February 1, 1924, paid, pursuant to the terms of the notes and deeds of trust, the $798.75 note and the coupon in the sum of $756.25 maturing February 1, 1924, making the total amount paid at the end of eleven months $1,555, and this is the maximum amount, in addition to the principal, that could have been required of them on default in payment and acceleration of maturity date by reason thereof. Interest from March 1, 1923 to February 1, 1924 at ten per cent per annum would be $1,375, and adding thereto the expense actually incurred and paid by The Deming Investment Company in the sum of $206, we have the sum of $1,581, and it is manifest that if the default occurred at any other interest paying period, then interest at ten per cent per annum on the principal of the loan would far exceed all the amounts that could be required under the contract.

Therefore, the judgment of the trial court is reversed and judgment is here rendered that National Life Insurance Company recover of and from Theodore Schroeder the sum of $27,595.21, with interest thereon from this date at the rate of ten per cent per annum until paid, together with all costs incurred in this cause, and that its lien be foreclosed on the real property described in its petition as against Theodore Schroeder and wife, Elizabeth Schroeder.